IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

TAWFIK BOULOS,                                )
                                              )
                                              )
        PLAINTIFF,                            )
                                              )
v.                                            )        CIVIL ACTION NO.
                                              )        1:05-CV-1175-HHK
OMNI HOTELS MANAGEMENT, ET. AL,               )
                                              )        Next event:
                                              )        Status Conference:
        DEFENDANTS.                           )        October 13, 2006
_____   )

PLAINTIFF'S REPLY TO "DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO COMPEL" AND OPPOSITION TO DEFENDANTS'
"MOTION FOR A PROTECTIVE ORDER"

## I.   PROCEDURAL HISTORY

On April 4, 2006, Plaintiff filed his Motion to Compel discovery of certain

documents that Defendants had withheld from discovery on the basis of alleged work

product and attorney-client privilege.  See Docket Entry No. 11.  On April 14, 2006,

Defendants opposed Plaintiff's Motion to Compel and moved for a Protective Order in

the same brief.  See Docket Entry No. 13.  Defendants maintain that these are privileged

because they were prepared in anticipation of litigation of a workers' compensation

claim and/or an EEOC Charge.  Plaintiff now files together his Opposition to

Defendants' Motion for a Protective Order and Reply to Defendants' Response to

Plaintiff's Motion to Compel Discovery.

## II.   ARGUMENT

**A.      Defendants Bear The Burden Of Asserting And Proving They
Are Entitled To Withhold Documents Under The Attorney-Client And
Work Product Privileges; Defendants' Attempt To Place The Initial
Burden On Plaintiff To Prove That Defendants Are Not Entitled To
Refuse To Produce The Documents Must Fail**

Defendants (Brf. at 4) imply that Plaintiff's Motion to Compel Discovery is flawed because Plaintiff failed to advance any legal argument in his Motion -- other than arguments addressing the adequacy of the privilege logs and waiver of privilege – setting forth why Defendants are *not* entitled to claim work product or attorney client privilege as to the contested documents.   It is beyond dispute, however, that the party asserting the privilege bears the burden of demonstrating that the documents may be withheld.  See Fed. R. Civ. P. 26(b)(5); <u>Alexander v. FBI</u>, 192 F.R.D. 42, 46 (D.D.C. 2000) (quoting <u>Compagnie Francaise D' Assurance v. Phillips Petroleum Co.</u>, 105 F.R.D. 16, 40 (S.D.N.Y. 1984)).  In this case, it is *Defendants, and not Plaintiff,* who have asserted both attorney-client and work product privilege as the basis for withholding relevant documents. Accordingly, Defendants herein were required to prove applicability of the privilege. See <u>In re Lindsey</u>, 158 F.3d 1263, 1270 (D.C. Cir. 1998) ("It is settled law that the party claiming the privilege bears the burden of proving that the communications are protected"); <u>Minebea Co. v. Papst</u>, 228 F.R.D. 13, 16 (D.D.C. 2005)("It is . . . established that the party asserting the attorney-client or work product privilege always bears the burden of demonstrating that the communications/documents sought to be shielded are, in fact, privileged.").

      **B.**     <u>**Defendants Have Offered Neither Extrinsic Nor Subjective Evidence That The Documents At Issue Were Prepared In Anticipation Of Litigiation; Hence, Those Documents Should Not Be Accorded Work Product Status Under Federal Rule Of Civil Procedure 26(B)(3).**</u>

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Rule 26(b)(3) sets forth the work product privilege:  "a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision

(b)(1) of this rule and prepared *in anticipation of litigation* or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. "  See also <u>EEOC v. Lutheran Social Servs.</u>, 186 F.3d 959, 968 (D.C. Cir. 1999) ("To resolve the parties' competing work product claims," the court analyzes "'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" (quoting <u>Senate of Puerto Rico v. United States Dep't of Justice</u>, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987)).

Defendants (Brf. at 5) argue that Rule 26(b)(3) protects-- ***as work product***-- documents drafted by Omni's non-attorney Human Resources personnel in response to an EEOC charge filed against the company.  However, even assuming the general proposition that under Rule 26(b)(3), materials prepared by non-attorneys may be protected regardless of whether the author is acting for or with an attorney, so long as they were clearly prepared in anticipation of litigation, [1] Defendants (Brf. at 5) appear wrongly to contend that the mere fact that they had received an EEOC charge compels a finding that Omni's personnel contemplated litigation during the preparation of documents responsive to that charge.

The existence *vel non* of a charge is not dispositive of the issue.  In order for a document to be created in anticipation of litigation, "'the lawyer must at least have had a

---

[1]      See <u>Hertzberg v. Veneman</u>, 273 F. Supp. 2d 67, 78 (D.D.C. 2003), (internal quotations and citation omitted); Defendants (Brf. at 5)

subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable.'" <u>Hertzberg v. Veneman</u>, 273 F. Supp. 2d 67, 79 (D.D.C. 2003) (quoting <u>In re Sealed Case</u>, 146 F.3d 881, 884 (D.C. Cir. 1998). See also <u>Coastal States Gas Corp. v. Dep't of</u> <u>Energy</u>, 617 F.2d 854, 865 (D.C. Cir. 1980) (litigation must be "fairly foreseeable"). Thus, it follows that the party asserting the privilege must produce ***some type*** of evidence that it actually contemplated the onset of litigation when creating the documents in order to successfully assert work product privilege. Such evidence is critical because, as Judge Facciola pointed out in <u>Willingham v. Ashcroft</u>, No. 02-1972, 2005 U.S. Dist. LEXIS 22258 (D.D.C. Oct. 4, 2005), when determining whether a party created a document in anticipation of litigation, ***"[m]otivation is key***." <u>Id.</u> at * 5. Defendants have failed to set forth the necessary evidence –– or any evidence at all – to satisfy this Circuit's requirement that a real anticipation of litigation motivated the creation of documents purported to be protected by the work product privilege.

As shown below, Defendants in this case have failed to provide any evidence that Defendants believed that litigation of Ms. Taylor's EEOC charge was "a real possibility." Accordingly, Plaintiff's Motion should be granted, and Defendants' Motion denied.

1.    **<u>Evidence That A Party Anticipated Litigation May Be Shown Through Extrinsic Evidence, Such As Litigation-Related Activities, And/Or By Subjective Testimonial Evidence</u>**

While a defendant asserting work product privilege need not necessarily demonstrate that its employees were acting at the direction of or under the supervision of an attorney, <u>Hertzberg</u>, 273 F. Supp. at 78, ***the fact that a party consulted and/or worked under the supervision of an attorney is powerful extrinsic evidence that the party did, in fact, anticipate litigation***. Inversely, the fact that a party ***did not*** consult

4

an attorney has persuaded courts that the work product privilege was inapplicable.  For example, in <u>Cason v. Builders Firstsource – Southeast Group</u>, 159 F. Supp. 2d 242 (W.D.N.C. 2001), the plaintiff filed a claim under 42 U.S.C.§ 1981 against his former employer.  Although the court found dispositive the fact that the materials had been prepared by a member of Defendant's management staff rather than an attorney, it went on the observe that:

> … *Defendant has not alleged that it even consulted an attorney prior to investigating Plaintiff's charges* or that the notes contain an attorney's opinions or even facts developed by an attorney. Consequently, these notes are not within the work product doctrine and are subject to discovery. Accordingly, the undersigned will grant Plaintiff's Motion to Compel . . . .

<u>Cason</u>, 159 F. Supp. 2d at 247 (emphasis added).

In a case factually identical to the one at bar, the court in <u>EEOC v. Commonweath Edison,</u> No. 86 C 0236, 1987 U.S. Dist. LEXIS 14052 (N.D. Ill. July 8, 1987) declined to find documents prepared by two non-lawyers privileged.  The non-lawyers who prepared the documents in that case were an "Equal Employment Administrator" (Ward) and an "Industrial Relations representative" (Komos).  They drafted their documents in response to notification by the EEOC that an employee had filed a sexual harassment charge against the company.  In its decision declining to provide work product protection, the court noted:

> . . . there [is nothing] in Ward's conduct after [notification of the charge] to indicate that he or defendant thereafter expected litigation to result. ***Notably, Ward did not refer the matter to defendant's attorneys.*** Despite the fact that he is not an attorney, he handled the ensuing investigation on his own. While he sent statements that he intended to file with the EEOC to an attorney, he agreed that the attorney never made any changes or notations on the material, or played any part in the investigation. No one but Ward had any contact with the EEOC prior to the EEOC's notification in July, 1985, that it believed the charge had merit. This is

> hardly the kind of conduct one would expect from a defendant that
> believed that a charge was going to result in a suit being filed against it.

Id. at 1987 U.S. Dist. LEXIS 14052 at * 5 (emphasis added).

In cases where the party asserting the privilege did not consult an attorney, courts have relied on other kinds of extrinsic evidence to find that the party genuinely contemplated litigation. In Viacom, Inc. v. Sumitomo Corp. (In re Copper Mkt. Antitrust Litig.), 200 F.R.D. 213, 221 (D.N.Y. 2001) (rev'd on other grounds), an antitrust case cited by the Hertzberg court, the defendant hired Robinson Lerer & Montgomery ("RLM"), a firm that specialized in litigation-related crisis management, after an admission of illegal conduct by one of its employees to the Commodities Futures Trading Commission ("CFTC"). Noting that the firm was hired shortly after the confession, when it became apparent that the CFTC might commence an enforcement action, the Viacom court found that the materials created by the consultant should be considered work product. Id.

In some cases, evidence of a *subjective* belief that litigation could occur has been shown through testimony of the individuals who prepared the documents. For example, in In re Sealed Case, 146 F.3d 881, 885 (D.C. Cir. 1998),[2] the National Policy Forum ("NPF") employed an attorney to analyze the legality of the relationship between the Republican National Committee ("RNC") and the NPF in response to a news report suggesting that the organization might be violating federal campaign laws. Approximately two years later, the Democratic National Committee ("DNC') filed a complaint with the Federal Election Commission against the two entities and a grand

---

[2]    Although the issue in this case was whether a "'specific claim' must have arisen at the time the lawyer prepared the documents before a court can conclude that they were in fact prepared 'because of the prospect of litigation,'" In re Sealed Case, 146 F.3d 881, 885 (D.C. Cir. 1998), the court's analysis is instructive here.

jury issued a subpoena to obtain the memoranda created by the lawyer.  The RNC and

NPF asserted work product privilege as to the material.  In support of their claim, the

lawyer who drafted the materials testified that he "was aware that the Federal Election

Commission ('FEC') had the authority to conduct investigations and initiate civil actions

... concerning possible violations of the Federal Election Campaign Act."  Id. at 886.  The

court found "most important" that the attorney stated that he "was further aware that

the NPF had been criticized in the press as an organization used by the RNC to evade

federal campaign finance laws, and thus [he] had a significant concern that litigation

over this issue was probable."  Id.  After reviewing this evidence, the court concluded

that "we think the affidavits sufficiently establish that . . . the client asked the lawyer to

review a matter that the client feared could lead to litigation, and that the lawyer,

knowing critics were scrutinizing the RNC-NPF relationship, prepared documents in

anticipation of litigation over exactly that relationship."  Id.

       In Hertzberg v. Veneman, 273 F. Supp. 2d 67, 77 (D.D.C. 2003), an attorney from

the USDA Office of General Counsel advised the Forest Service to conduct an

investigation after property damage resulted from the Forest Services' wildfire

suppression activities.  The plaintiff, who represented a group of individuals alleging

that Forest Service activities damaged their property, later filed a FOIA request seeking

production of witness statements taken in connection with this investigation.  Defendant

asserted work product privilege and refused to produce the statements.   Id. at 73.  In

support of the assertion of work product privilege, the defendant offered declarations

stating that "because the Special Agent in Charge for Law Enforcement and

Investigations ("LEI") (a non-attorney) and an Associate Regional Attorney with the

Office of the General Counsel, USDA (an attorney), both recognized 'the strong

probability of tort claims arising from the burnout operations,' the Associate Regional Attorney, Mark Lodine, 'suggested, and the group agreed, that an investigation should be conducted to collect evidence, which would allow the Forest Service to defend itself in the event that the Agency is sued for damages from the burnout operation.'"  Id. at 77-78.  Noting that the plaintiff had provided no evidence to "refute" this evidence of subjective intent, the court found that the documents had been created in anticipation of litigation.  Id. at 78.

In the majority of cases found by Plaintiff where the court upheld a claim of work product privilege, including those discussed above, the party asserting the privilege set forth *both* extrinsic and subjective evidence that it anticipated litigation – i.e, they retained an attorney or some other litigation-related service *and* submitted testimony of these individuals.  In In re Sealed Case, 146 F.3d at 881, the defendants both retained the attorney who later gave an affidavit that he contemplated litigation when creating the documents.   Similarly, in EEOC v. Lutheran Social Servs., a Lutheran board member testified that the board hired counsel after receiving two anonymous sexual harassment complaints  "[t]o prepare for the possibility of a lawsuit by the president . . . [and] in anticipation of a suit being brought on grounds of a hostile work environment for women." 186 F.3d at 968.  See also Hertzberg, 273 F. Supp. 2d at 77 (attorney testified he advised investigation be "conducted to collect evidence, which would allow the Forest Service to defend itself in the event that the Agency [was] sued for damages"); Viacom, Inc., 200 F.R.D. at 221 (court found work product privileged applied when party hired a litigation-related firm and that firm's representative testified "from the outset, RLM knew its representation was litigation-related."); Niagara Mohawk Power

Corp. v. Stone & Webster Eng'g Corp., 125 F.R.D. 578, 581 (D.N.Y. 1989) (defendant retained counsel when notified of Public Service Commission's change in policy).

> 2. **Defendants Have Failed To Provide Any Extrinsic Or Subjective Evidence That Omni Believed That Litigation Of Ms. Taylor's EEOC Charge Was "A Real Possibility"**

Defendants herein have failed to set forth any extrinsic or subjective evidence that the contested documents were created in anticipation of litigation. To the contrary, they have represented both to Plaintiff's counsel and in their response and Motion (Brf. at 6), that they employ in-house counsel. See Exhibit 1 hereto - March 1, 2006 email from Coles to Walsh. Accordingly, at any time, Defendants' non-attorney employees could have easily sought the advice and guidance of an attorney had they expected that Taylor's charge would result in litigation. Indeed, that would have obviously been the prudent thing for them to do. Alternatively, Defendants could have retained outside counsel as in Lutheran Social Services. What actually happened was the opposite: Jean Allen, Defendants' Human Resources Director at the Omni Shoreham, testified that instead of consulting in-house or outside counsel, she sought her advice and guidance from another Human Resources Manager, Chuck Wing, ***and no one else***. She testified:

> Q:   After you had received the charge, did you investigate the charge?
> A:   As best I could, yes.
> Q:   How did you do that?
> A:   I first went to her file to glean the information that I could.
> Q:   . . .   Besides reviewing the file, what else did you do?
> A:   I spoke with Chuck Wing.
> Q:   Who is Chuck Wing?
> A:   Chuck Wing was, at the time I was there, the area director of H.R., and I had an indirect reporting relationship to him.
> Q:   . . . And what did you and Mr. Wing talk about?
> A:   Any information he knew relative to the Sandra Taylor situation.
> Q:   Did he know any information?
> A:   Very little.
> Q:   . . .   Did he give you any advice?

A:   More formatting the position paper since it was one of the first times I was responsible for putting it together.
Q:   Did you write the position paper?
A:   With his assistance, yes.
Q:   . . . You say you wrote the position paper with Chuck Wing's assistance. Correct?
A:   . . . Yes, that is correct.
*Q:   Did anyone else help you?*
*A:   No.*

Exhibit 2 hereto – excerpt from deposition of Jean Allen ("Allen dep.") at 39-43

(emphasis added).  Thus, Defendants' actions and their witnesses' testimony strongly

suggest that they did not anticipate litigation.  Indeed, according to Allen's deposition

testimony, the fact that Defendants entrusted a non-lawyer, Allen, who lacked

experience preparing documents to respond to EEOC further illuminates the fact that

Defendants did not anticipate litigation.

Furthermore, Defendants declined to involve counsel even when mediating Ms.

Taylor's charge at the EEOC.  Allen further testified:

Q:   How was the EEOC charge for Sandra Taylor resolved?
A:   We attended mediation.
Q:   . . . Did you attend?
A:   Yes, I did.
Q:   Did anyone else attend?
A:   Chuck Wing attended.
Q:   Just the three of you?
A:   Yes.
Q:   Do you remember if Sandra had counsel?
A:   I do not remember.
Q:   Did you have counsel?
A:   No.

Exhibit 2 hereto, Allen dep. at 43.

The only evidence Defendants (Brf. At 2) have offered in support of their claim of

privilege is *counsel's bare assertion* that the documents at issue were "part of

Defendants' investigation into the EEOC charge brought by Sandra Taylor and are part

of Defendants' preparation for the Boulos' 2001 workers' compensation litigation."
Nowhere do Defendants even attempt to identify which documents were prepared in
anticipation of which litigation, much less offer any evidence in support. Counsel's
unsupported assertions that the materials were prepared in anticipation of some
particular though unspecified litigation are insufficient to carry their motion. See United
States v. Wade, 93 F. Supp. 2d 19, 23 (D.D.C. 2000) ("Unsupported assertions in a brief
cannot substitute for evidence in the record.") (quoting ACLU v. Barnes, 168 F.3d 423,
436 (11th Cir. 1999)).

        Moreover, although Defendants (Brf. at 6) also appear to assert that the
documents at issue were created as work product in response to the Boulos workers'
compensation litigation, that administrative litigation did not commence until after Mr.
Boulos' termination in September 2001. See Exhibit 3 hereto – letter and application to
D.C. Office of Workers Compensation. Moreover, Mr. Boulos himself could not possibly
have had any reason to initiate litigation prior to August 24, 2001, because until that
date, Mr. Boulos was indisputably receiving all the workers compensation benefits to
which he was arguably entitled. See Exhibit 4 hereto, August 24, 2001 letter to Boulos
terminating benefits. Only after his benefits were completely terminated on that date,
could anyone have anticipated any workers compensation litigation. Nor have
Defendants produced any evidence that would contradict this self-evident conclusion.
Thus, any documents predating August 24, 2001 would not have been prepared with
any workers' compensation litigation in mind. See Moody v. IRS, 682 F.2d 266, 268 (D.C.
Cir. 1982) ("the work product privilege is not absolute but extends only to subsequent
related cases") (citing Grolier, Inc. v. Federal Trade Comm'n, 671 F.2d 553 (D.C. Cir.
1982)).

Defendants rely solely upon Miller v. Federal Express Corp., 186 F.R.D. 376 (W.D.Tenn. 1999), which is distinguishable.  Although the defendants in that case did not offer testimonial evidence, Federal Express' Legal Department appears to have supervised and overseen an investigation resulting from the filing of EEOC Charges. The plaintiff filed a race discrimination charge with the EEOC on August 7. Approximately one week later, on August 13, the Legal Department informed the defendant's Employee Relations department that an EEOC charge had been filed by plaintiff and instructed Employee Relations to begin an investigation into the plaintiff's claim.  One of the members of the Employee Relations department conducted the investigation and then reported the results back to defendant's Legal Department.  Id. at 382.[3]  This early and consistent attorney involvement indicates that Federal Express anticipated that litigation could result from the charge. By contrast, Defendants in this case apparently did not think to involve counsel until years after Taylor filed her EEOC charge.

In McPeek v. Ashcroft, 202 F.R.D. 332, 339 (D.D.C. 2001), Judge Facciola noted that after a charge had been filed, "[a]ny reasonable lawyer would believe that litigation . . . was likely if the EEO process did not result in a determination favorable to plaintiff. Indeed, to be blunt, any *lawyer* who did not so anticipate is too naive to be working at DOJ."  (Emphasis added.)  In this case, however, Allen, Austin, and/or Wing are lawyers,[4] such that Judge Facciola's assertions regarding naiveté are inapplicable. Critically, Defendants have failed completely to set forth any evidence whatsoever that

_____

[4]    The privilege log entry for documents Bates-stamped by Defendants 2395-2396 also references a "C. Combs."  Defendants have never identified this individual to Plaintiff an attorney.

these individuals believed that they were performing anything other than their own typical human resources or insurance industry functions. Non-attorney employees cannot litigate a case in court, and it is undisputed that Omni did not contact an attorney or otherwise involve an attorney in the investigation or subsequent mediation of Ms. Taylor's EEOC charge or in the handling of Mr. Boulos' workers' compensation claim prior to August 24, 2001 and probably much later. It is also undisputed that Omni did not offer any evidence that any of the individuals involved in creating the documents at issue in fact expected that litigation would result from either the EEOC charge or the workers compensation claim prior to the denial of benefits. Defendants have, therefore, failed to carry their burden of showing that they are entitled to work product protection for the contested materials.

### 3. Plaintiff Consents To An In Camera Inspection Of The Contested Materials

Assuming *arguendo* that this Court finds that the materials at issue are protected as work product, even absent provision of any evidence that Defendants did, in fact, expect future litigation, Plaintiff agrees with Defendants' (Brf. at 8) admission that an in camera inspection is necessary. It may be that only some of the information Defendants claim to be privileged within the documents is in fact entitled to protection. If the challenged documents "contain information which [the party] would be expected to obtain or compile in the ordinary course of its business," then that portion of the document is discoverable. Occidental Chem. Corp. v. OHM Remediation Servs. Corp., 175 F.R.D. 431, 435 (D.N.Y. 1997) (cited in Hertzberg). Thus, in this specific case, if any of the contested documents contain information for "adjusting employee relations in the

ordinary course of business," <u>Miller</u>, 186 F.R.D. at 387 (W.D. Tenn. 1999), Defendants

must—at a minimum-- produce a redacted form of those documents.  <u>Id.</u>

      C.        **<u>Defendants Have Not Shown That They Are Entitled To Withhold
Documents Under The Attorney-Client Privilege</u>**

      The attorney-client privilege applies when a communication satisfies the

following requirements:

> (1) the asserted holder of the privilege is or sought to become a client; ***(2)
> the person to whom the communication was made (a) is a member of the
> bar of a court or his subordinate and (b) in connection with this
> communication is acting as a lawyer;*** (3) the communication relates to a
> fact of which the attorney was informed (a) by his client (b) without the
> presence of strangers (c) for the purpose of securing primarily either (i) an
> opinion of law or (ii) legal services or (iii) assistance in some legal
> proceeding, and (d) not for the purpose of committing a crime or tort; and
> (4) the privilege has been (a) claimed and (b) not waived by the client.

<u>Alexander</u>, 192 F.R.D. at 15-16 (quoting <u>In re Sealed Case</u>, 737 F.2d 94, 98-99 (D.C.

Cir. 1984)).

      Defendants (Brf. at 6) argue that the documents they claim to be attorney-

client privileged were communications between Omni and its in house and

outside counsel.  To clarify, Plaintiff objects to that characterization with regard

only to Documents Bates-stamped by Defendants as 1613, 2080, 2081-2085, and

2116-2142.  In those instances, Defendants fail to indicate that an attorney was a

party to the communications.  Defendants have verbally represented to Plaintiff

that Gerry Bennett, the only party listed as to documents Bates-stamped 2080

and 2081-2085, was an administrative assistant.  Documents Bates-stamped 1613

and 2116-2142 consist of communications between two Omni Human Resources

Managers and a insurance company Claims Representative, not between any

employee and an attorney.  Because these communications do not appear to

involve a communication to or by a member of the bar, Defendants cannot properly invoke the attorney-client privilege and, therefore, these documents must be produced.  In re Bruce R. Lindsey (Grand Jury Testimony), 158 F.3d 1263, 1267 (D.C. Cir. 1998) ("The attorney-client privilege protects confidential communications made between clients and *their attorneys* when the communications are for the purpose of securing legal advice or services.") (emphasis added).

> D.    **Defendants' Assertion That Adequacy Of Privilege Logs Are Secondary Issues  Is In Error And Should Be Rejected By This Court**

Defendants' (Brf. at 6) argument that the Court should easily dispense with Boulos' contentions regarding insufficient privilege logs is unavailing.  Even after reviewing Boulos' motion to compel, Defendants, while asserting the right to withhold otherwise discoverable evidence on account of privilege, nonetheless refuse even to provide basic identifying information with regard to that evidence through a proper privilege log.  Thus, Defendants essentially insist on their right to withhold the identity the attorney involved in the allegedly privileged attorney-client communications – a mandatory element for an assertion of the attorney client privilege.  See Alexander, 192 F.R.D. at 15-16.  Similarly, as noted above, Defendants refuse to identify the specific litigation anticipated when the documents were created—as between Ms. Taylor's EEO claims and Mr. Boulos' workers compensation litigation.  Defendants' adoption of this posture has real consequences for the administration of justice.  As a result of Defendants' approach, what arguably (in the unlikely event that Defendants' assertions of privilege prove correct) might have been a matter easily resolved between the opposing attorneys privately, is now before the Court for a judicial resolution of this

contested Motion and possibly for inspection of discovery documents *in camera*, because Defendants refuse to create a proper privilege log.  Plaintiff submits that it should not go unnoticed by this Court that Defendants have not even attempted to argue that their logs are sufficient and, more importantly, have not remedied the obvious defects when challenged.  Based on all this, this Court should reject Defendants' contention regarding the alleged insignificance of privilege logs

     E.    **Defendants' Contentions Regarding Alleged Lack of Waiver Are Without Merit[5]**

Defendants (Brf. at 7) argue that they have not waived the work product privilege as to Document No. 1613, but their attempt to distinguish the case law cited by Plaintiff illustrating waiver fails.  Although Defendants may not have waited a year to attempt to recover the document at issue, see <u>Bowles v. Nat'l Ass'n of Home Builders</u>, 224 F.R.D. 246, 257 (D.D.C. 2004), under the circumstances of this case, Defendants' delay is unreasonable.

"[W]hen a party's adversary has obtained possession of a party's work product and refuses to recognize the work product privilege, the party asserting the privilege must move expeditiously for relief . . . ."  <u>In re Grand Jury (Impounded)</u> 138 F.3d 978, 979-80 (3d. Cir. 1998).  While Defendants argue that the first time they learned that Plaintiff intended to keep documents number 1613 was on March 3, 2006, this is simply incorrect.  On February 24, Plaintiff's counsel sent Defendants a letter stating:  ". . . in case my letter of February 23, 2006, was not clear, I am also disputing your assertion of

---

[5]    Plaintiff recognizes that the returned documents were not exact duplicates of materials not claimed by Defendants to be privileged and were drafts of Answers to Interrogatories rather than the Answers themselves.  However, as the two sets of documents contained identical *information*, Plaintiff simply did not see a reason to waste attorney and/or judicial time and resources arguing waiver.

work product privilege as to emails, memos or other documents by Jean Allen or between Jean Allen and other Omni employees." See Exhibit 8 attached to Plaintiff's Motion to Compel Discovery, letter from Walsh to Coles dated Feb. 24, 2006. Document No. 1613 is an email from Jean Allen. Thus, Plaintiff did not wait until March 3 to inform Defendants that he contested the claim of privilege. Rather, his counsel did so the day of or, at the very latest, the day after, Defendants first asserted the privilege.

Plaintiff also points out that after becoming aware of the allegedly inadvertent disclosure, Defendants (Brf. At 8) waited more than a month to "confirm[] the facts supporting Defendants' claim of privilege" as to this document. This hardly qualifies as zealously attempting to assert the privilege. See SEC v. Lavin, 111 F.3d 921, 929 (D.C. Cir. 1997); Bowles, 224 F.R.D. at 254.

In addition, as set forth more fully in Plaintiff's Motion to Compel, Defendants refused to respond to Plaintiff's inquires as to when Defendants would file their motion for protective order, and it was therefore only in response to *Boulos'* Motion that Defendants even attempted to assert the right to return of the document directly to this Court. Thus, because Defendants did not expeditiously investigate or attempt to enforce the claimed privilege and never independently sought judicial intervention to effect return of the document, or any others potentially at issue, before Plaintiff filed his Motion to Compel, the Court should find that Defendants have waived any privilege as to the contested materials.

Although Defendants assert (Brf. At 7) that Document No. 1613 "is the only document now in dispute regarding waiver," Defendants (Brf. At 4) also state that "Defendants' counsel informed Plaintiff's counsel verbally that the same privileged documents as those previously listed in the February 23 letter appeared multiple times

in the production but with different Bates numbers [and] . . . *once the Judge ruled on the actual documents, Defendants would give all applicable Bates numbers for those documents.*" (emphasis added). While Defendants' meaning is far from clear, Plaintiff interprets Defendants' argument to indicate that Plaintiff possesses unidentified, allegedly privileged, documents, produced to Plaintiff by Defendants and potentially used during the course of this litigation, that Defendants intend to request Plaintiff return.[6] If such is the case, then Document No. 1613 is *not* the only document Plaintiff argues waiver. Thus, Plaintiff argues that Defendants have waived any privilege *as to these unidentified documents, as well*. As in the case of Document No. 1613, Defendants have waited nearly four months, the same length of time as the defendant in In re Grand Jury (Impounded), 138 F.3d at 979-80, an instance where the court found waiver, to effect recovery of these unidentified documents and did so only in response to a Motion to Compel. Moreover, even after the close of discovery and the filing of Plaintiff's Motion to Compel, Defendants still have not identified all the documents they claim are privileged. Thus, Plaintiff does not even know which documents Defendants reference. Through their failure to designate documents as privileged and, as discussed more fully above, failure to seek judicial intervention to secure return of these allegedly privileged documents, Defendants must be found to have waived any claim of privilege as to these documents, as well.

### III.    CONCLUSION

Defendants have not carried their burden of showing that any of the purportedly privileged documents are entitled to protection. They have failed to offer any extrinsic,

---

[6]    Plaintiff is not aware of any duplicates of document Bates stamped number 1613 produced by Defendants.

objective evidence or subjective evidence that Defendants' employees anticipated litigation at the time they created the contested documents (as set forth in the table in Plaintiff's Motion to Compel Discovery) and, thus, are privileged as work product. Defendants have also failed to show that the documents allegedly attorney-client privileged involved communications with an attorney. In the event that the Court so wishes, however, Plaintiff consents to an *in camera* inspection of the allegedly privileged documents. Finally, the Court should find that Defendants have waived any privilege through their unreasonable delay in identifying and/or seeking return of previously produced documents.

Respectfully submitted,

THE GOLDSMITH LAW FIRM, LLC

_____
Leizer Z. Goldsmith (D.C. Bar No. 419544)
Kristen L. Walsh (D.C. Bar No. 495767)
1900 L Street, N.W., Suite 614
Washington, D.C. 20036
Telephone: (202) 775-0040
Facsimile: (202) 775-0005

Attorneys for Plaintiff Tawfik Boulos

## CERTIFICATE OF SERVICE

I certify that I served by First Class Mail, postage prepaid the following counsel with one copy of the foregoing Motion to Compel Discovery this 27th day of April 2006:

Mike Coles
Lisa T. Edwards
The Coles Firm, P.C.
3838 Oak Lawn Ave, Suite 1825
Dallas, TX 75219
214-443-7832 (phone)
972-692-7145 (fax)
Attorney for Defendants

_____/s/_____
Kristen L. Walsh