IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAWFIK BOULOS, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 1:05-CV-1175- |
| § | HHK |
| OMNI HOTELS CORP., ET AL, § | |
| § | |
| Defendants. § | |
| § | |

DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Pursuant to Local Civil Rule 7(h), and in support of their Motion for Summary Judgment, Defendants Omni Hotels Management Corporation and Omni Hotels Corporation respectfully submit this statement of material facts as to which there is no genuine issue to be tried.[1]

1. Plaintiff Tawfik Boulos (hereinafter "Plaintiff Boulos") began work with Defendant Omni Hotels Management Corporation (hereinafter "OHMC") in January 2001.  Deposition of Tawfik Boulos (hereinafter "Exh. A, Boulos Dep.") at 13:3-9; 26:12-18.

2. During Plaintiff Boulos' employment with OHMC, Plaintiff Boulos knew of and was aware of OHMC's policy on harassment and discrimination.  Exh. A, Boulos Dep. at 31:19-22.

3. Plaintiff Boulos was hired by OHMC as the Director of Housekeeping at the Omni Shoreham Hotel.  Exh. A, Boulos Dep. at 34:20 – 35:1.

4. A Director of Housekeeping typically works ten (10) to fourteen (14) hours each day.  Deposition of Naseem Siddiqui (hereinafter "Exh. C, Siddiqui Dep."), at

---

[1] The following record evidence is attached hereto and referred to herein as Exhibits A-G:  Exhibit A, Relevant Excerpts from Deposition of Tawfik Boulos; Exhibit B, Relevant Excerpts from Deposition of Karen Treciak; Exhibit C, Relevant Excerpts from Deposition of Naseem Siddiqui, Exhibit D, Relevant Excerpts from Deposition of Rahwa Ghebregiorgis; Exhibit E, Declaration of Joy Rothschild; Exhibit F, Plaintiffs First Amended Complaint; Exhibit G, Plaintiff Boulos Responses to First Set of Interrogatories.

    25:1-9; Deposition of Rahwa Ghebregiorgis (hereinafter "Exh. D, Ghebregiorgis Dep."), at 16:9-18.

5.  A Director of Housekeeping would be expected to conduct inspections for cleanliness and maintenance issues for approximately four (4) hours each day. Exh. C, Siddiqui Dep. at 23:12-15; Exh. D, Ghebregiorgis Dep. at 15:4 – 16:8.

6.  As Director of Housekeeping, Plaintiff Boulos was required to inspect rooms, typically inspecting 20-25 rooms each day. Exh. A, Boulos Dep. at 43:13 – 44:3; Exh. C, Siddiqui Dep. at 17:8-20.

7.  When the Director of Housekeeping inspects a room, he must bend and closely examine the room for cleanliness, as well as examine the room to ensure the room is stocked with supplies, including supplies in the bathrooms and closets. Exh. D, Ghebregiorgis Dep. at 20:21 – 21:22.

8.  As Director of Housekeeping, Plaintiff Boulos also personally inspected all public areas within the hotel. Exh. A, Boulos Dep. at 48:7 – 49:7.

9.  A Director of Housekeeping may not assign inspection duties to other employees; subordinate managers are assigned separate inspections to complete. Exh. D, Ghebregiorgis Dep. at 18:11 – 19:12.

10.  Plaintiff Boulos was injured on-the-job while working for OHMC on June 6, 2001. Exh. A, Boulos Dep. at 110:14 – 111:11.

11.  After his injury, Plaintiff Boulos worked until June 11, 2001, at which time OHMC instructed Plaintiff Boulos to go to George Washington Hospital. Exh. A, Boulos Dep. at 115:7-13.

12.  During Plaintiff Boulos' doctor visit on June 11, 2001, Plaintiff Boulos was told not to return to work. Exh. A, Boulos Dep. at 116:10-13.

13.  Plaintiff Boulos was told to miss two (2) days of work, June 12-13, 2001, and returned to work on June 14, 2001 with restrictions on his work. Exh. A, Boulos Dep. at 116:10 – 117:7.

14.  On June 18, 2001, Plaintiff Boulos returned to George Washington Hospital, and was told to meet with Dr. Yu, an orthopedist. Exh. A, Boulos Dep. at 121:2 – 15.

15.  Plaintiff Boulos worked on restricted duty at the Omni Shoreham through July 2, 2001. Exh. A, Boulos Dep. at 121:19 – 122:9.

16.  As a result of his on-the-job injury, Plaintiff Boulos worked on restricted duty for approximately one month. Exh. A, Boulos Dep. at 123:11-13.

17.  As part of his limited duties, Plaintiff Boulos did not regularly visit the guest room floors or conduct room inspections. Exh. A, Boulos Dep. at 125:14 – 126:8.

18. On July 3, 2001 Plaintiff Boulos was instructed by Dr. Yu not to return to work. Exh. A, Boulos Dep. at 122:18 – 123:7.

19. Also in July 2001, Plaintiff Boulos spoke to Jean Allen, the Human Resources Director at the Omni Shoreham Hotel, regarding complaints by Sandra Taylor, a former OHMC employee, against Said Elkhodary, Plaintiff Boulos' immediate supervisor. Exh. A, Boulos Dep. at 99:1-21; First Amended Complaint at ¶ 37, attached hereto as Exhibit F.

20. During Plaintiff Boulos' conversation with Jean Allen in July 2001, Plaintiff Boulos informed Jean Allen that he [Plaintiff Boulos] believed Sandra Taylor was harassed and discriminated against by Said Elkhodary. Exh. A, Boulos Dep. at 96:3-18.

21. In a separate meeting, Plaintiff Boulos also told Jean Allen that he would testify at Sandra Taylor's unemployment compensation hearing. Plaintiff Boulos told Jean Allen that he intended to testify that Sandra Taylor was being harassed based on her race and that Said Elkhodary abused her. Exh. A, Boulos Dep. at 100:21 – 101:11.

22. Plaintiff Boulos did not work from July 3, 2001 to September 8, 2001. Exh. A, Boulos Dep. at 136:22 – 137:6.

23. Plaintiff was compensated for missing work from July 3, 2001 until Zurich American Insurance Company (hereinafter "Zurich Insurance"), OHMC's Worker's Compensation insurance carrier in 2001, believed Plaintiff Boulos should return to work. Exh. A, Boulos Dep. at 140:2-16; 142:10-22; Deposition of Karen Treciak (hereinafter "Exh. B, Treciak Dep."), at 14:9-18.

24. At Zurich Insurance's request, Plaintiff Boulos met with Dr. Gordon, an independent physician, in August 2001. Exh. A, Boulos Dep. at 143:11-20.

25. After Dr. Gordon's independent medical examination, Plaintiff Boulos was informed that Dr. Gordon decided that Plaintiff Boulos was able to work. Exh. A, Boulos Dep. at 145:8-12.

26. In late August 2001, Plaintiff Boulos received a letter from Zurich Insurance advising Plaintiff Boulos that he would no longer receive any Worker's Compensation benefits, and he would be required to return to work with no restrictions. Exh. A, Boulos Dep. at 140:17 – 141:7; 146:18 – 147:9.

27. Plaintiff Boulos believed that Dr. Gordon's examination was cursory and insufficient. Exh. A, Boulos Dep. at 148:6-15.

28. During the last five (5) days of August 2001, Plaintiff Boulos had a conference call with Jean Allen and Peter Austin, the General Manager at the Omni Shoreham Hotel. Exh. A, Boulos Dep. at 151:1-22.

29. During his conference call with Jean Allen and Peter Austin, Plaintiff Boulos was asked when he would return to work. Plaintiff Boulos informed Peter Austin that he was eager to return to work, but could not return to work because of the pain he was experiencing. Exh. A, Boulos Dep. at 152:6-17.

30. During the conference call with Plaintiff Boulos, Jean Allen, and Peter Austin, Jean Allen mostly discussed the appeals process so Plaintiff Boulos could appeal Zurich Insurance's decision to deny benefits as of August 24, 2001. Exh. A, Boulos Dep. at 153:4-18.

31. During this conference call, Peter Austin focused mostly on Plaintiff Boulos' options: return to work with no restrictions, resign, or be terminated. Exh. A, Boulos Dep. at 153:4-18.

32. Rather than the options presented by Peter Austin, Plaintiff Boulos wanted (1) Zurich Insurance to continue paying for his medical treatment and (2) to return to his prior position at the Omni Shoreham Hotel after he felt he could work at full capacity. Exh. A, Boulos Dep. at 154:3 – 155:1.

33. On September 8, 2001, Plaintiff Boulos returned to work at the Omni Shoreham Hotel. Exh. A, Boulos Dep. at 156:2-4.

34. When Plaintiff Boulos returned to work at the Omni Shoreham Hotel he was provided with a list of job duties and responsibilities normally associated with his position as Director of Housekeeping, which included walking the public areas and inspecting rooms. Exh. A, Boulos Dep. at 156:6-18.

35. Plaintiff Boulos experienced severe pain and could not perform his job duties on September 8, 2001. Exh. A, Boulos Dep. at 158:3 – 159:1.

36. Plaintiff Boulos was advised to leave work for the day and to return on Monday, September 10, 2001. Exh. A, Boulos Dep. at 158:19 – 159:8.

37. On Monday, September 10, 2001, Plaintiff Boulos returned to the Omni Shoreham Hotel where he had a meeting with Jean Allen, a woman believed to be Stacey Johnson, and Peter Austin. Exh. A, Boulos Dep. at 159:10 – 160:9.

38. During Plaintiff Boulos' meeting at the Omni Shoreham Hotel on September 10, 2001, Peter Austin provided Plaintiff with the same three options: work at full capacity, resign, or be terminated. Exh. A, Boulos Dep. at 160:11-22.

39. Plaintiff Boulos asked for more time to recover from his injury, and requested an unpaid leave of absence. Exh. A, Boulos Dep. at 163:7 – 164:8.

40. During Plaintiff Boulos' tenure with OHMC, he was not entitled to time off. Exh. A, Boulos Dep. at 105:6-16.

41. Plaintiff Boulos wanted unpaid leave instead of resigning because Plaintiff Boulos wanted to return to his prior position at the end of his unpaid leave of absence. Exh. A, Boulos Dep. at 164:18 – 165:3.

42. Alternatively, Plaintiff Boulos wanted a modified position with the Omni Shoreham Hotel until he felt he could return to work at full capacity. Exh. A, Boulos Dep. at 165:12 – 166:8.

43. Plaintiff Boulos believed he could serve as a PBX operator or administrative assistant without much walking. Exh. A, Boulos Dep. at 166:14 – 167:3.

44. Plaintiff Boulos, however, knew of no openings for a PBX operator or administrative assistant at the Omni Shoreham Hotel in September 2001. Exh. A, Boulos Dep. at 167:22 – 168:10.

45. During his meeting on September 10, 2001 with Jean Allen, Peter Austin, and a woman believed to be Stacey Johnson, Plaintiff Boulos was terminated. Exh. A, Boulos Dep. at 170:1-13.

46. Plaintiff Boulos believes he was terminated because he could not perform his job duties and because he supported Sandra Taylor in her charge of discrimination against OHMC and Said Elkhodary. Exh. A, Boulos Dep. at 173:14 – 174:1.

47. Plaintiff Boulos' sole evidence that his termination was related to his support of Sandra Taylor is "the sequence of events." Exh. A, Boulos Dep. at 183:5-13.

48. The sequence of events that Plaintiff Boulos believes shows he was retaliated against for supporting Sandra Taylor are: (1) after his accident, Plaintiff Boulos was called at home and asked if he was feeling better; (2) after Plaintiff Boulos told Jean Allen he supported Sandra Taylor, Karen Treciak of Zurich Insurance called to say he needed to return to work; (3) after he spoke to Karen Treciak, Plaintiff Boulos was referred to an independent physician; (4) the independent physician recommended Plaintiff Boulos return to work without restrictions; and (5) no one was willing to accommodate Plaintiff Boulos' injury after he was released to full duty by the independent physician. Exh. A, Boulos Dep. at 183:14 – 184:19.

49. Plaintiff Boulos, however, has no knowledge of whether the actions taken by Karen Treciak and Zurich Insurance are based on his support of Sandra Taylor or based on instructions from OHMC. Exh. A, Boulos Dep. at 185:9-22.

50. In fact, Zurich Insurance decisions and actions were based on the District of Columbia's Workers' Compensation Act; Claims Adjusters handled files for Zurich Insurance under the supervision of a Supervisor and acted according to Zurich Insurance's policies and procedures. Exh. B, Treciak Dep. at 27:1-14; 37:15 – 38:4

51. Plaintiff Boulos also has no knowledge of whether the independent physician, Dr. Gordon, acted based on Plaintiff Boulos' support for Sandra Taylor. Exh. A, Boulos Dep. at 186:1-7.

52. Plaintiff Boulos has no idea why Karen Treciak and Dr. Gordon handled his case as they did. Exh. A, Boulos Dep. at 187:5-17.

53. Additionally, Plaintiff Boulos is not aware of any other employees at the Omni Shoreham Hotel who were similarly situated or treated differently. Exh. A, Boulos Dep. at 187:18 – 188:8.

54. The only thing Plaintiff Boulos believes OHMC would have done differently, had he not supported Sandra Taylor, was keep Plaintiff Boulos on Worker's Compensation, pursue further medical treatment for Plaintiff Boulos, and allow Plaintiff Boulos to return to work when he felt he was fully recovered from his injury. Exh. A, Boulos Dep. at 188:9 – 189:2.

55. To receive Worker's Compensation benefits, however, Plaintiff Boulos must submit a medical authorization excusing him from work. Exh. B, Treciak Dep. at 33:20 – 34:7.

56. To be entitled to perform modified job duties, an employee at the Omni Shoreham Hotel must have suffered an on-the-job injury and have a note from a doctor requesting modified duties. Exh. C, Siddiqui Dep. at 34:18 – 38:9; Exh. D, Ghebregiorgis Dep. at 31:6 – 33:1.

57. For Plaintiff Boulos to receive medical benefits from Zurich Insurance, Plaintiff Boulos' physician must contact Zurich Insurance for authorization. Exh. B, Treciak Dep. at 34:8 – 35:9.

58. Employers, such as OHMC, have no input into whether a claimant, such as Plaintiff Boulos, receives Worker's Compensation benefits or is paid medical benefits. Exh. B, Treciak Dep. at 37:12-14; 38:15-19; 86:21 – 87:1.

59. Employers, such as OHMC, do not have the authority to request an independent medical examination. Exh. B, Treciak Dep. at 42:1-13.

60. Employers, such as OHMC, have no input in determining (1) if an employee is released to return to work; (2) what benefits will be paid, if any, to an injured worker; (3) when benefits will be terminated; (4) if an independent medical examination will be requested; (5) what consequences will arise based upon an independent medical examination; or (6) when an injured employee is qualified to return to work. Exh. B, Treciak Dep. at 87:2 – 88:2.

61. In fact, Zurich Insurance made the decision to terminate Plaintiff Boulos' Worker's Compensation benefits; the decision was made by Karen Treciak without any involvement by OHMC. Exh. B, Treciak Dep. at 48:5 – 49:5.

62. When an injured employee, such as Plaintiff Boulos, has Worker's Compensation benefits terminated based on an independent medical examination, and the employee's treating physician disagrees with the results of the independent medical examination, the employee has the right to file an appeal with the District of Columbia Worker's Compensation Commission. Exh. B, Treciak Dep. at 56:22 – 58:11.

63. Employers, such as OHMC, are not involved in determining which physician's diagnosis should be accepted or disregarded; employers, such as OHMC, are not involved in the decision-making regarding injured employees. Exh. B, Treciak Dep. at 64:18 – 65:9.

64. Plaintiff Boulos claims that "[s]ometime in August of 2001, Jean Allen threatened [him] with retaliatory action if he testified favorably at Taylor's unemployment compensation hearing." Plaintiff Boulos' Response to Interrogatories at # 2, attached hereto as Exhibit G.

65. When asked, however, Plaintiff Boulos cannot identify any specific retaliation that was threatened by Jean Allen. Exh. A, Boulos Dep. at 191:7-10.

66. Plaintiff Boulos believes OHMC interfered with or obstructed his Worker's Compensation benefits. Exh. A, Boulos Dep. at 196:12-15.

67. In fact, Plaintiff Boulos believes OHMC has a duty to control his Worker's Compensation benefits. Exh. A, Boulos Dep. at 196:16-19.

68. But Plaintiff Boulos' only evidence of control by OHMC over his Worker's Compensation benefits is the fact that OHMC pays premiums to Zurich Insurance, the Worker's Compensation insurance carrier. Exh. A, Boulos Dep. at 196:20 – 197:8.

69. Plaintiff Boulos' only evidence that OHMC obstructed his Worker's Compensation benefits is the fact that OHMC agreed with Dr. Gordon despite the fact that Plaintiff Boulos believed Dr. Gordon's medical examination was insufficient. Exh. A, Boulos Dep. at 197:9 – 198:11.

70. Omni Hotels Corporation has no employees, and never employed Plaintiff Boulos during his tenure at the Omni Shoreham Hotel. Plaintiff Boulos was employed by OHMC. Declaration of Joy Rothschild (hereinafter "Exh. E, Rothschild Dec."), Exhibit E hereto at ¶ 3.

71. Omni Hotels Corporation is nothing more than a holding company, and is not involved in the day-to-day operations or management of OHMC. Exh. E, Rothschild Dec. at ¶¶ 4, 10.

72. Omni Hotels Corporation does not commingle accounts or credit with OHMC. Exh. E, Rothschild Dec. at ¶ 6.

73. Omni Hotels Corporation does not issue any paychecks or participate in any human resources function on behalf of OHMC. Exh. E, Rothschild Dec. at ¶¶ 7, 9, and 11-12.

74. Omni Hotels Corporation has not and does not issue regulations, policies, or procedures to be followed, adopted, or implemented by OHMC. Exh. E, Rothschild Dec. at ¶¶ 10 and 13.

Dated:  June 26, 2006                                        Respectfully submitted,

/s/
Michael E. Coles
The Coles Firm, P.C.
3838 Oak Lawn Ave., Suite 1825
Dallas, Texas 75219
214-443-7862 – Telephone
972-692-7145 – Facsimile

/s/
Amy L. Bess, D.C. Bar No. 418985
Sonnenschein Nath & Rosenthal LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005
202-408-6400 – Telephone
202-408-6399 – Facsimile

Counsel for Defendants Omni Hotels Management Corp. and Omni Hotels Corp.