IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                            )
**TAWFIK BOULOS,**                                )
                                                            )
                                                            )
      **PLAINTIFF,**                           )
                                                            )
v.                                                         )     **CIVIL ACTION NO.**
                                                            )     **1:05-CV-1175-HHK**
**OMNI HOTELS MANAGEMENT CORP.,** )
                                                            )
                                                            )
                                                            )
      **DEFENDANT.**                         )
_____)

**PLAINTIFF'S RESPONSES TO DEFENDANT'S
STATEMENT OF "UNDISPUTED" MATERIAL FACTS**

    1.    *Plaintiff Tawfik Boulos (hereinafter "Plaintiff Boulos") began work with Defendant Omni Hotels Management Corporation (hereinafter "OHMC") in January 2001. Deposition of Tawfik Boulos (hereinafter "Exh. A, Boulos Dep.") at 13:3-9; 26:12-18.*

    **Undisputed**.

    2.    *During Plaintiff Boulos' employment with OHMC, Plaintiff Boulos knew of and was aware of OHMC's policy on harassment and discrimination. Exh. A, Boulos Dep. at 3 1:19-22.*

    **Undisputed**.

    3.    *Plaintiff Boulos was hired by OHMC as the Director of Housekeeping at the Omni Shoreham Hotel. Exh. A, Boulos Dep. at 34:20 35:1.*

    **Undisputed**.

    4.    *A Director of Housekeeping typically works ten (10) to fourteen (14) hours each day. Deposition of Naseem Siddiqui (hereinafter "Exh. C, Siddiqui Dep."), at 25:1-9; Deposition of Rahwa Ghebregiorgis (hereinafter "Exh. D, Ghebregiorgis Dep."), at 16:9-18.*

    **Disputed.** Neither cited witness, Siddiqui nor Ghebregiorgis, testified that a Director of Housekeeping worked fourteen (14) hours per day. At the deposition excerpt referred to by Defendant, Naseem Siddiqui, the Assistant Director of Housekeeping, testified that: "A good director of housekeeping can't

imagine work less than 12 hours." (Deposition of Nassem Siddiqui ("Siddiqui Dep.") at 25:1-4). Siddiqui testified that he worked thirteen (13) or fourteen (14) hours per day. Id. at 25:1:5-9. Rahwa Ghebregiorgis, a Housekeeping Manager, testified that "the average length of day a Director of Housekeeping works is "different from person to person. Some may work only 10 hours, some may work only 8 hours, and I have seen people working more than 10 hours. It depends on what the occupancy is, if everything is finished they have no reason to stay." (Ghebregiorgis Dep. at 8, 16). Peter Austin, General Manager of the Omni Shoreham Hotel, testified that a Director of Housekeeping worked five days a week and a "normal workday" began around 7:00 or 8:00 a.m. and concluded at 5:00 at night. Deposition of Peter Austin at 34-35:17-1.

5. *A Director of Housekeeping would be expected to conduct inspections for cleanliness and maintenance issues for approximately four (4) hours each day. Exh. C, Siddiqui Dep. at 23:12-15; Exh. D, Ghebregiorgis Dep. at 15:4 – 16:8.*

**Disputed**. See Boulos Dec. ¶14-15 .

6. *As Director of Housekeeping, Plaintiff Boulos was required to inspect rooms, typically inspecting 20-25 rooms each day. Exh. A, Boulos Dep. at 43:13 – 44:3; Exh. C, Siddiqui Dep. at 17:8-20.*

**Disputed.** The Director of Housekeeping, the Assistant Director of Housekeeping and the Floor Supervisors all inspected rooms; there were no policies about how many rooms the director of housekeeping is supposed to inspect personally. Boulos Dec. ¶ 11, 15.

7. *When the Director of Housekeeping inspects a room, he must bend and closely examine the room for cleanliness, as well as examine the room to ensure the room is stocked with supplies, including supplies in the bathrooms and closets. Exh. D, Ghebregiorgis Dep. at 20:2 1 – 21:22.*

**Undisputed. Disputed**, however, that such duties cannot be delegated. Boulos Dec. ¶11, 15.

8. *As Director of Housekeeping, Plaintiff Boulos also personally inspected all public areas within the hotel. Exh. A, Boulos Dep. at 48:7 – 49:7.*

**Undisputed** that Boulos as Housekeeping Director, and others, including the Director of Rooms and General Manager, inspected the public areas. Disputed that these duties could not be delegated. Boulos Dec. ¶ 10, 11, 15.

9. *A Director of Housekeeping may not assign inspection duties to other employees; subordinate managers are assigned separate inspections to complete. Exh. D, Ghebregiorgis Dep. at 18:11 – 19:12.*

Disputed. See Boulos Dec. Boulos Dec. ¶ 11, 15.

    10.    *Plaintiff Boulos was injured on-the-job while working for OHMC on June 6, 2001. Exh. A, Boulos Dep. at 110:14 – 111:11.*

**Undisputed.**

    11.    *After his injury, Plaintiff Boulos worked until June 11, 2001, at which time OHMC instructed Plaintiff Boulos to go to George Washington Hospital. Exh. A, Boulos Dep. at 115:7-13.*

**Disputed.** Boulos testified that "when the pain started to really, really get to bother me a lot," Said Elkhodary, Boulos' supervisor at the Omni Shoreham Hotel, asked him to go George Washington Emergency Room. (Boulos Dep. at 114).

    12.    *During Plaintiff Boulos' doctor visit on June 11, 2001, Plaintiff Boulos was told not to return to work. Exh. A, Boulos Dep. at 116:10-13.*

**Disputed.** Boulos testified that he was instructed not to return to work for two days. Boulos Dep. at 116:10-13.

    13.    *Plaintiff Boulos was told to miss two (2) days of work, June 12-13, 2001, and returned to work on June 14, 2001 with restrictions on his work. Exh. A, Boulos Dep. at 116:10 – 117:7.*

**Undisputed.**

    14.    *On June 18, 2001, Plaintiff Boulos returned to George Washington Hospital, and was told to meet with Dr. Yu, an orthopedist. Exh. A, Boulos Dep. at 121:2 – 15.*

**Undisputed.**

    15.    *Plaintiff Boulos worked on restricted duty at the Omni Shoreham through July 2, 2001. Exh.A, BoulosDep. at 121:19 – 122:9.*

**Undisputed.**

    16.    *As a result of his on-the-job injury, Plaintiff Boulos worked on restricted duty for approximately one month. Exh. A, Boulos Dep. at 123:11-13.*

**Undisputed.**

    17.    *As part of his limited duties, Plaintiff Boulos did not regularly visit the guest room floors or conduct room inspections. Exh. A, Boulos Dep. at 125:14 – 126:8.*

**Disputed.** Boulos inspected rooms as much as his physical condition allowed. Boulos Dec. at 10.

    18.    *On July 3, 2001 Plaintiff Boulos was instructed by Dr. Yu not to return to work. Exh. A, Boulos Dep. at 122:18 – 123:7.*

3

**Undisputed.**

19.     Also in July 2001, Plaintiff Boulos spoke to Jean Allen, the Human Resources Director at the Omni Shoreham Hotel, regarding complaints by Sandra Taylor, a former OHMC employee, against Said Elkhodary, Plaintiff Boulos' immediate supervisor. Exh. A, Boulos Dep. at 99:1-21; First Amended Complaint at ¶ 37, attached hereto as Exhibit F.

**Undisputed in part; Disputed in part.** Undisputed that Boulos spoke to Jean Allen, the Human Resources Director at the Omni Shoreham Hotel, regarding complaints by Sandra Taylor against Said Elkhodary, Boulos' immediate supervisor, in July 2001. Disputed that this was the only time that Boulos spoke to Allen about Sandra Taylor. See Boulos Dep. at 100-01, 191-92.

20.     During Plaintiff Boulos' conversation with Jean Allen in July 2001, Plaintiff Boulos informed Jean Allen that he [Plaintiff Boulos] believed Sandra Taylor was harassed and discriminated against by Said Elkhodary. Exh. A, Boulos Dep. at 96:3-18.

**Undisputed.**

21.     In a separate meeting, Plaintiff Boulos also told Jean Allen that he would testify at Sandra Taylor's unemployment compensation hearing. Plaintiff Boulos told Jean Allen that he intended to testify that Sandra Taylor was being harassed based on her race and that Said Elkhodary abused her. Exh. A, Boulos Dep. at 100:21 – 101:11.

**Undisputed.**

22.     Plaintiff Boulos did not work from July 3, 2001 to September 8, 2001. Exh. A, Boulos Dep. at 136:22 – 137:6.

**Undisputed.**

23.     Plaintiff was compensated for missing work from July 3, 2001 until Zurich American Insurance Company (hereinafter "Zurich Insurance"), OHMC's Worker's Compensation insurance carrier in 2001, believed Plaintiff Boulos should return to work. Exh. A, Boulos Dep. at 140:2-16; 142:10-22; Deposition of Karen Treciak (hereinafter "Exh. B, Treciak Dep."), at 14:9-18.

**Undisputed.**

24.     At Zurich Insurance's request, Plaintiff Boulos met with Dr. Gordon, an independent physician, in August 2001. Exh. A, Boulos Dep. at 143:11-20.

**Disputed that Gordon was "independent"; undisputed as to remainder**

25.     After Dr. Gordon's independent medical examination, Plaintiff Boulos was informed that Dr. Gordon decided that Plaintiff Boulos was able to work. Exh. A, Boulos Dep. at 145:8-12.

**Undisputed.**

4

26.     In late August 2001, Plaintiff Boulos received a letter from Zurich Insurance advising Plaintiff Boulos that he would no longer receive any Worker's Compensation benefits, and he would be required to return to work with no restrictions. Exh. A, Boulos Dep. at 140:17 – 141:7; 146:18 – 147:9.

**Undisputed**.

27.     Plaintiff Boulos believed that Dr. Gordon's examination was cursory and insufficient. Exh. A, Boulos Dep. at 148:6-15.

**Undisputed.**

28.     During the last five (5) days of August 2001, Plaintiff Boulos had a conference call with Jean Allen and Peter Austin, the General Manager at the Omni Shoreham Hotel. Exh. A, Boulos Dep. at 15 1:1-22.

**Undisputed.**  The deposition testimony cited, however, does not specifically reference a conference call.

29.     During his conference call with Jean Allen and Peter Austin, Plaintiff Boulos was asked when he would return to work. Plaintiff Boulos informed Peter Austin that he was eager to return to work, but could not return to work because of the pain he was experiencing. Exh. A, Boulos Dep. at 152:6-17.

**Disputed as stated.**  This statement mischaracterizes Boulos' testimony. Boulos actually testified as follows: "And I let him know that I am just as eager to go back to work providing that I go back to work without the pain, number one, I cannot go to work with the pain; and number two, I cannot go against my treating physician.  And number 3, again I brought to her attention all my notes about my observations about the examination of the independent doctor, Dr. Gordon, that was mainly the content of the conversation." Boulos Dep. at 152:6-17.

30.     During the conference call with Plaintiff Boulos, Jean Allen, and Peter Austin, Jean Allen mostly discussed the appeals process so Plaintiff Boulos could appeal Zurich Insurance's decision to deny benefits as of August 24, 2001. Exh. A, Boulos Dep. at 153:4-18.

**Undisputed.**

31.     During this conference call, Peter Austin focused mostly on Plaintiff Boulos' options: return to work with no restrictions, resign, or be terminated. Exh. A, Boulos Dep. at 153:4-18.

**Undisputed**.

32.     Rather than the options presented by Peter Austin, Plaintiff Boulos wanted (1) Zurich Insurance to continue paying for his medical treatment and (2) to return to his prior position at the Omni Shoreham Hotel after he felt he could work at full capacity. Exh. A, Boulos Dep. at 154:3 – 155:1.

5

**Undisputed.**

33. *On September 8, 2001, Plaintiff Boulos returned to work at the Omni Shoreham Hotel. Exh. A, Boulos Dep. at 156:2-4.*

**Undisputed.**

34. *When Plaintiff Boulos returned to work at the Omni Shoreham Hotel he was provided with a list of job duties and responsibilities normally associated with his position as Director of Housekeeping, which included walking the public areas and inspecting rooms. Exh. A, Boulos Dep. at 156:6-18.*

**Undisputed.**

35. *Plaintiff Boulos experienced severe pain and could not perform his job duties on September 8, 2001. Exh. A, Boulos Dep. at 158:3 – 159:1.*

**Undisputed** that Boulos could not perform the full range of his job duties on September 8, 2001, **Disputed** as to the remainder.

36. *Plaintiff Boulos was advised to leave work for the day and to return on Monday, September 10, 2001. Exh. A, Boulos Dep. at 158:19 – 159:8.*

**Undisputed.**

37. *On Monday, September 10, 2001, Plaintiff Boulos returned to the Omni Shoreham Hotel where he had a meeting with Jean Allen, a woman believed to be Stacey Johnson, and Peter Austin. Exh. A, Boulos Dep. at 159:10 – 160:9.*

**Undisputed.**

38. *During Plaintiff Boulos' meeting at the Omni Shoreham Hotel on September 10, 2001, Peter Austin provided Plaintiff with the same three options: work at full capacity, resign, or be terminated. Exh. A, Boulos Dep. at 160:11-22.*

"The same three options" is vague; **Undisputed** that Austin told Boulos on September 10 that he could work at full capacity, resign or be terminated.

39. *Plaintiff Boulos asked for more time to recover from his injury, and requested an unpaid leave of absence. Exh. A, Boulos Dep. at 163:7 – 164:8.*

**Undisputed.**

40. *During Plaintiff Boulos' tenure with OHMC, he was not entitled to time off. Exh. A, Boulos Dep. at 105:6-16.*

**Undisputed in part; Disputed in part.** Undisputed that Boulos had not worked for the

6

Omni Shoreham long enough to require Omni to offer him time off under its policies, absent retaliatory motive.

41.  *Plaintiff Boulos wanted unpaid leave instead of resigning because Plaintiff Boulos wanted to return to his prior position at the end of his unpaid leave of absence. Exh. A, Boulos Dep. at 164:18 – 165:3.*

**Undisputed** that Boulos requested unpaid leave. He also/instead sought modified job duties and/or assistance in obtaining medical care. See Pl's Brief and Statement of Material Facts in Dispute.

42.  *Alternatively, Plaintiff Boulos wanted a modified position with the Omni Shoreham Hotel until he felt he could return to work at full capacity. Exh. A, Boulos Dep. at 165:12- 166:8.*

**Undisputed.**

43.  *Plaintiff Boulos believed he could serve as a PBX operator or administrative assistant without much walking. Exh. A, Boulos Dep. at 166:14 – 167:3.*

**Undisputed.**

44.  *Plaintiff Boulos, however, knew of no openings for a PBX operator or administrative assistant at the Omni Shoreham Hotel in September 2001. Exh. A, Boulos Dep. at 167:22 – 168:10.*

**Undisputed.**

45.  *During his meeting on September 10, 2001 with Jean Allen, Peter Austin, and a woman believed to be Stacey Johnson, Plaintiff Boulos was terminated. Exh. A, Boulos Dep. at 170:1-13.*

**Undisputed.**

46.  *Plaintiff Boulos believes he was terminated because he could not perform his job duties and because he supported Sandra Taylor in her charge of discrimination against OHMC and Said Elkhodary. Exh. A, Boulos Dep. at 173:14 – 174:1.*

**Disputed** to the extent that Boulos does not believe that he was terminated for inability to perform his job duties. Indeed, **t**he testimony cited by Defendant does not make any reference to a failure to perform job duties. In the lines cited, Boulos testified as follows:

Q:   All right. We've gone through your concerns about your termination. Are there other issues that you haven't yet told me about in terms of why you did not believe you should be terminated?

A:   I think I've mentioned to you all the circumstances except for the fact that I feel that I have been discriminated against.

Q:   Discriminated against based on what?

7

A:    Based on my testimony on behalf of Sandra Taylor.

Boulos Dep. at 173:14 – 174:1.

47.    *Plaintiff Boulos' sole evidence that his termination was related to his support of Sandra Taylor is "the sequence of events." Exh. A, Boulos Dep. at 183:5-13.*

**Disputed.** Boulos' evidence that Defendant' unlawfully discriminated against him is set forth in his opposition brief.

48.    *The sequence of events that Plaintiff Boulos believes shows he was retaliated against for supporting Sandra Taylor are: (1) after his accident, Plaintiff Boulos was called at home and asked if he was feeling better; (2) after Plaintiff Boulos told Jean Allen he supported Sandra Taylor, Karen Treciak of Zurich Insurance called to say he needed to return to work; (3) after he spoke to Karen Treciak, Plaintiff Boulos was referred to an independent physician; (4) the independent physician recommended Plaintiff Boulos return to work without restrictions; and (5) no one was willing to accommodate Plaintiff Boulos' injury after he was released to full duty by the independent physician. Exh. A, Boulos Dep. at 183:14 - 184:19.*

**Disputed.** See Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment and Statement of Material Disputed Facts (with citations), which provide the relevant chronology in great detail.

49.    *Plaintiff Boulos, however, has no knowledge of whether the actions taken by Karen Treciak and Zurich Insurance are based on his support of Sandra Taylor or based on instructions from OHMC. Exh. A, Boulos Dep. at 185:9-22.*

**Undisputed.**

50.    *In fact, Zurich Insurance decisions and actions were based on the District of Columbia's Workers' Compensation Act; Claims Adjusters handled files for Zurich Insurance under the supervision of a Supervisor and acted according to Zurich Insurance's policies and procedures. Exh. B, Treciak Dep. at 27:1-14; 37:15 – 38:4*

**Undisputed in part; Disputed in part**. Undisputed that Treciak testified that Zurich handles files according to the District of Columbia's Workers' Compensation Act and Zurich's policies; Disputed to the extent that Treciak had any personal recollection of Boulos' case or how it was processed. Treciak Dep. at 23-25, 32-33.

51.    *Plaintiff Boulos also has no knowledge of whether the independent physician, Dr. Gordon, acted based on Plaintiff Boulos' support for Sandra Taylor. Exh. A, Boulos Dep. at 186:1-7.*

**Disputed** that the Zurich-paid Gordon was "independent". **Undisputed** as to the remainder.

8

52. *Plaintiff Boulos has no idea why Karen Treciak and Dr. Gordon handled his case as they did. Exh. A, Boulos Dep. at 187:5-17.*

**Undisputed.**

53. *Additionally, Plaintiff Boulos is not aware of any other employees at the Omni Shoreham Hotel who were similarly situated or treated differently. Exh. A, Boulos Dep. at 187:18 – 188:8.*

**Undisputed** that Boulos is unaware of other employees at Omni who testified that the company had engaged in unlawful racial discrimination and harassment at a public hearing. **Disputed** as to the remainder.

54. *The only thing Plaintiff Boulos believes OHMC would have done differently, had he not supported Sandra Taylor, was keep Plaintiff Boulos on Worker's Compensation, pursue further medical treatment for Plaintiff Boulos, and allow Plaintiff Boulos to return to work when he felt he was fully recovered from his injury. Exh. A, Boulos Dep. at 188:9 – 189:2.*

**Disputed**. Defendant, by selecting a single excerpt from Boulos' deposition, has mischaracterized his testimony. Boulos testified earlier that he also asked for a modification of his position and/or leave without pay. Boulos dep. at 65-66. Boulos also believes that Defendant would have accommodated these requests had he not supported Sandra Taylor in her allegations of discrimination and harassment against the Omni Shoreham. See Boulos Dec. ¶ 11.

55. *To receive Worker's Compensation benefits, however, Plaintiff Boulos must submit a medical authorization excusing him from work. Exh. B, Treciak Dep. at 33:20 – 34:7.*

**Undisputed.**

56. *To be entitled to perform modified job duties, an employee at the Omni Shoreham Hotel must have suffered an on-the-job injury and have a note from a doctor requesting modified duties. Exh. C, Siddiqui Dep. at 34:18 – 38:9; Exh. D, Ghebregiorgis Dep. at 31:6 – 33:1.*

**Disputed.** Undisputed that Siddiqui and Ghebegiorgis testified that as supervisors, they could not modify a position without a doctor's note. Siddiqui Dep. at 34:18 – 38:9; Exh. D, Ghebregiorgis Dep. at 31:6 – 33:1. Boulos did not work for Siddiqui and Ghebregiorgis, however. Peter Austin, the General Manger of the Omni Shoreham Hotel and Boulos' second line supervisor, testified that, as General Manager, he **could have** altered Boulos' job duties even if Boulos was no longer on workers' compensation and did not qualify for "light duty." Austin testified that he chose not to do so. Austin Dep. at 173:3-24.

57. *For Plaintiff Boulos to receive medical benefits from Zurich Insurance, Plaintiff Boulos' physician must contact Zurich Insurance for authorization. Exh. B, Treciak Dep. at 34:8 – 35:9.*

**Undisputed**.

9

58. *Employers, such as OHMC, have no input into whether a claimant, such as Plaintiff Boulos, receives Worker's Compensation benefits or is paid medical benefits. Exh. B, Treciak Dep. at 37:12-14; 38:15-19; 86:21 – 87:1.*

**Disputed** as to "paid medical benefits;" undisputed as to workers compensation. See Def's "Undisputed" Fact No. 69**.**

59. *Employers, such as OHMC, do not have the authority to request an independent medical examination. Exh. B, Treciak Dep. at 42:1-13.*

> **Disputed.** Undisputed that there is no evidence of record to show that Defendant could require its carrier to implement an independent medical examination. Disputed as to the remainder.

60. *Employers, such as OHMC, have no input in determining (1) if an employee is released to return to work; (2) what benefits will be paid, if any, to an injured worker; (3) when benefits will be terminated; (4) if an independent medical examination will be requested; (5) what consequences will arise based upon an independent medical examination; or (6) when an injured employee is qualified to return to work. Exh. B, Treciak Dep. at 87:2 – 88:2.*

> **Undisputed** that Treciak so testified with regard to workers compensation. **Disputed** that Omni could not rely on primary physicians, could not modify job duties, could not permit unpaid leave, could not promovide medical insurance. See  Def's Def's "Undisputed" Fact No. 69.

61. *In fact, Zurich Insurance made the decision to terminate Plaintiff Boulos' Worker's Compensation benefits; the decision was made by Karen Treciak without any involvement by OHMC. Exh. B, Treciak Dep. at 48:5 – 49:5.*

**Undisputed that this was Treciak's testimony.**

62. *When an injured employee, such as Plaintiff Boulos, has Worker's Compensation benefits terminated based on an independent medical examination, and the employee's treating physician disagrees with the results of the independent medical examination, the employee has the right to file an appeal with the District of Columbia Worker's Compensation Commission. Exh. B, Treciak Dep. at 56:22 – 58:11.*

**Undisputed.**

63. *Employers, such as OHMC, are not involved in determining which physician's diagnosis should be accepted or disregarded; employers, such as OHMC, are not involved in the decision-making regarding injured employees. Exh. B, Treciak Dep. at 64:18 – 65:9.*

> **Disputed.** See Allen's and Austin's testimony to the effect that management *may* decide. See Plaintiff's Statement of Material Disputed Facts, Nos. 70-78.

64. *Plaintiff Boulos claims that "[s]ometime in August of 2001, Jean Allen threatened [him]*

10

*with retaliatory action if he testified favorably at Taylor's unemployment compensation hearing."*
*Plaintiff Boulos' Response to Interrogatories at # 2, attached hereto as Exhibit G.*

    **Undisputed.**

    65.     *When asked, however, Plaintiff Boulos cannot identify any specific retaliation that was threatened by Jean Allen. Exh. A, Boulos Dep. at 19 1:7-10.*

    **Unisputed** that Allen did not inform Boulos at the time what specific retaliatory act she intended to undertake. However, disputed that no threat was implied. See Pl's Brief in support of his Opposition to Defendant's Motion for Summary Judgment, Argument B(4)(b).

    66.     *Plaintiff Boulos believes OHMC interfered with or obstructed his Worker's Compensation benefits. Exh. A, Boulos Dep. at 196:12-15.*

    **Disputed.** Boulos testified that "Omni Hotels" interfered with or obstructed his Workers' Compensation benefits. Boulos Dep. at 196:12.

    67.     *In fact, Plaintiff Boulos believes OHMC has a duty to control his Worker's Compensation benefits. Exh. A, Boulos Dep. at 196:16-19.*

    **Disputed.** Boulos testified that: "when I tell my employer that I was examined by a doctor for three minutes without even touching my back, that should alert my employer to go out there and say we are paying good premiums for insurance company to take a good care of our employees and you are not doing so. So that is, in my opinion is a good evidence that my employer did not do what they are supposed to do to take care of their employees." Boulos Dep. at 197.

    68.     *But Plaintiff Boulos' only evidence of control by OHMC over his Worker's Compensation benefits is the fact that OHMC pays premiums to Zurich Insurance, the Worker's Compensation insurance carrier. Exh. A, Boulos Dep. at 196:20 – 197:8.*

    **Undisputed**.

    69.     *Plaintiff Boulos' only evidence that OHMC obstructed his Worker's Compensation benefits is the fact that OHMC agreed with Dr. Gordon despite the fact that Plaintiff Boulos believed Dr. Gordon's medical examination was insufficient. Exh. A, Boulos Dep. at 197:9 – 198:11.*

    **Undisputed.**

    70.     *Omni Hotels Corporation has no employees, and never employed Plaintiff Boulos during his tenure at the Omni Shoreham Hotel. Plaintiff Boulos was employed by OHMC. Declaration of Joy Rothschild (hereinafter "Exh. E, Rothschild Dec."), Exhibit E hereto at ¶ 3.*

    **Undisputed.**

71.   *Omni Hotels Corporation is nothing more than a holding company, and is not involved in the day-to-day operations or management of OHMC. Exh. E, Rothschild Dec. at ¶~J 4, 10.*

**Undisputed.**

72.   *Omni Hotels Corporation does not commingle accounts or credit with OHMC. Exh. E, Rothschild Dec. at ¶ 6.*

**Undisputed.**

73.   *Omni Hotels Corporation does not issue any paychecks or participate in any human resources function on behalf of OHMC. Exh. E, Rothschild Dec. at 7, 9, and 11-12.*

**Undisputed.**

74.   *Omni Hotels Corporation has not and does not issue regulations, policies, or procedures to be followed, adopted, or implemented by OHMC. Exh. E, Rothschild Dec. at ¶IJ 10 and 13.*

**Undisputed.**

Respectfully submitted,

**THE GOLDSMITH LAW FIRM, LLC**

/s/
_____
Leizer Z. Goldsmith
D.C. Bar No. 419544
5335 Wisconsin Avenue NW
Suite 4400
Washington, D.C. 20015
Tel:  202-895-1506
Fax: 202-318-0798

Attorneys for Plaintiff Tawfik Boulos