IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TAWFIK BOULOS** : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | |
| : | |
| **OMNI HOTELS MANAGEMENT** : | Case No. 1:05-CV-1175-HHK |
| **CORPORATION,** : | |
| : | Next Event: |
| and : | Status Conference: |
| : | December 18, 2006 |
| **OMNI HOTELS CORPORATION** : | |
| : | |
| **Defendants.** : | |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S
STATEMENT OF DISPUTED MATERIAL FACTS**

1.  *Plaintiff Paul Boulos ("Boulos") began his employment with the Omni Shoreham Hotel in January of 2001 as the Director of Housekeeping. Deposition of Paul Boulos ("Boulos Dep.") at 13.*

    **Undisputed for purposes of this Motion.**

2.  *Boulos is Egyptian. Boulos Dec. ¶ 2.*

    **Undisputed for purposes of this Motion.**

3.  *Boulos' native language is Arabic. Boulos Dec. ¶ 3.*

    **Undisputed for purposes of this Motion.**

4.  *Boulos served as Executive Housekeeper at the Omni Shoreham Hotel. Boulos Dec. ¶ 4.*

    **Undisputed for purposes of this Motion.**

5.  *When Boulos entered on duty at the Omni Shoreham, Sandra Taylor ("Taylor") was the Assistant Director of Housekeeping. Deposition of Peter Austin at 51-52.*

    **Undisputed for purposes of this Motion.**

6. *Boulos succeeded a woman, most likely Irene Chin, after an extended period of time in which Defendants had no executive housekeeper. Boulos Dep. at 34-35.*

   **Undisputed for purposes of this Motion.**

7. *Taylor, who is African American, had performed the duties of the Director of Housekeeping for the prior half year, as well as the duties of Assistant Director of Housekeeping, before Boulos was hired. Austin Dep. at 13-14, 28; Boulos Dep. at 13, 34.*

   **Undisputed for purposes of this Motion.**

8. *Said Elkhodary was Director of Rooms at the Omni Shoreham Hotel and was Boulos' direct supervisor. Boulos Dep. at 16.*

   **Undisputed for purposes of this Motion.**

9. *Almost immediately upon Boulos' arrival at the Omni Shoreham, Elkhodary began making racially offensive remarks to Boulos about Taylor and African American employees. Boulos Dep. at 75-76, 93.*

   **Undisputed for purposes of this Motion.**

10. *Elkhodary told Boulos he should not live in College Park, Maryland because "College Park is full of blacks,[sic] and added: "Do you want your kids to go to school full of black kids?" Boulos Dep. at 76.*

    **Undisputed for purposes of this Motion.**

11. *Elkhodary demoted Taylor from her position as Assistant Director of Housekeeping to Laundry Manager in February of 2006. Boulos Dep. at 59, 64.*

    **Undisputed for purposes of this Motion.**

12. *Elkhodary repeatedly referred to Taylor as "el abda," which is Arabic for "a slave." Boulos Dep. at 78.*

    **Undisputed for purposes of this Motion.**

13. *Boulos told the Human Resources Manager at that time, Nate Foxworth, about Elkhodary's comments and that he believed that Taylor was being demoted because of her race. Boulos Dep. at 75-78.*

    **Undisputed for purposes of this Motion.**

- 2 -

14. *Elkhodary continued to make these racially discriminatory remarks after Boulos spoke to Foxworth about Elkhodary's remarks. Boulos Dep. at 80.*

   **Undisputed for purposes of this Motion.**

15. *Boulos never saw any indication that Mr. Foxworth reported his complaint to anyone else or that any action was taken against Elkhodary. Boulos Dep. at 80.*

   **Undisputed for purposes of this Motion.**

16. *Boulos had additional conversations with Foxworth about Elkhodary's comments about Taylor. Boulos Dep. at 85-86.*

   **Undisputed for purposes of this Motion.**

17. *Elkhodary refused to give Boulos his 90-day evaluation until Boulos fired Taylor. Boulos Dep. at 86.*

   **Undisputed for purposes of this Motion.**

18. *Boulos regularly heard Elkhodary shout and scream at Taylor. Boulos Dep. at 87-88.*

   **Undisputed for purposes of this Motion.**

19. *Elkhodary would stand behind Taylor at meetings while Taylor addressed the room attendants she supervised and "make faces" while Taylor was speaking. Boulos Dep. at 91-92.*

   **Undisputed for purposes of this Motion.**

20. *Around February 2001, Taylor was demoted by Elkhodary. Boulos Dep. at 64.*

   **Undisputed for purposes of this Motion.**

21. *Taylor's employment ended in April 2006.*

   **Undisputed for purposes of this Motion.[1]**

---

[1] Plaintiff claims Sandra Taylor's employment ended in April 2006, but this date is clearly mistaken. In her First Amended Complaint (the live pleading in this action), Sandra Taylor claimed she was constructively discharged in June 2001. *See* Plaintiff's First Amended Complaint at ¶ 22. As Plaintiff Boulos' Fact No. 21 is immaterial for purposes of Defendant's Motion for Summary Judgment, Defendant does not dispute this Fact but requests this Court take notice of Sandra Taylor's actual date of resignation as alleged by Ms. Taylor.

25186817\V-1

22. *On June 12, 2001, Taylor filed an EEOC charge, which named Boulos as a witness to the "College Park" comment and alleging discrimination on the basis of race and sex. Deposition of Jean Allen ("Allen Dep.") Exhibit 4.*

    **Undisputed for purposes of this Motion.**

23. *On June 6, 2001, Boulos was pushing some heavy linen carts while at work when he felt a sharp pain in his back. Boulos Dep. at 110-111.*

    **Undisputed for purposes of this Motion.**

24. *The pain kept getting worse, however, and on June 7, 2001, the next day, Boulos informed Elkhodary about the accident. Boulos Dep. at 111-112.*

    **Undisputed for purposes of this Motion.**

25. *Boulos continued working between June 7 and June 11, 2001. Boulos Dep. at 113-115.*

    **Undisputed for purposes of this Motion.**

26. *On June 11, 2001, the pain in Boulos' back became intolerable and Elkhodary requested that Boulos go to George Washington Hospital's Emergency Room ("GW") for treatment. Boulos Dep. at 191-92.*

    **Undisputed for purposes of this Motion.**

27. *The doctors at GW took Boulos out of work for two days, after which he could return to work on June 14 with restrictions. Boulos Dep. at 116, 119; Austin Dep. Exhibit 18 (GW Work limitation form).*

    **Undisputed for purposes of this Motion.**

28. *These restrictions included minimal walking, no climbing, no heavy lifting above 10 pounds, no work above chest height, no pushing, pulling, or twisting work, no carrying above 10 pounds, and no bending or stooping. Austin Dep. Exh. 18.*

    **Undisputed for purposes of this Motion.**

29. *The form instructed Boulos to return to GW for a follow up on June 18, 2001. Boulos Dep. at 121; Austin Dep. Exh. 18.*

    **Undisputed for purposes of this Motion.**

30. *Boulos returned to the GW Emergency Room on June 18 as instructed at which time he was provided a form indicating that he was to remain on altered duty, which*

25186817\V-1

*instructed that he was to engage in no heavy lifting above 10 pounds, no pushing, pulling or twisting work, no carrying above 10 pounds and no bending or stooping. Austin Dep. Exh. 17 (Work limitation form dated 6-18-01).*

**Undisputed for purposes of this Motion.**

31. *The physicians in the Emergency Room told Boulos to see an orthopedist named Dr. Warren Yu. Boulos Dep. at 121.*

**Undisputed for purposes of this Motion.**

32. *Boulos saw Dr. Yu on June 26, 2001 at which time Dr. Yu diagnosed back pain and herniated disk and placed Boulos on limited duty, indicated as no lifting. Boulos Dep. Exhibit 6.*

**Undisputed for purposes of this Motion.**

33. *Boulos continued working on limited duty through the week of June 26, 2001. Boulos Dep. Exhibit 6.*

**Undisputed for purposes of this Motion.**

34. *Boulos experienced sharp pain in his back whenever he stepped on his right foot and tried to avoid walking during this time. Boulos Dep. at 123.*

**Undisputed for purposes of this Motion.**

35. *While on limited duty, Boulos completed his paperwork, attended all the required meetings, such as union meetings and manager's meetings, and supervised the laundry, which was near his office, but avoided excessive walking due to the pain. Boulos Dep. at 123-124, 125-26.*

**Undisputed for purposes of this Motion.**

36. *On June 28, 2001, Defendant's Human Resources Director, Jean Allen ("Allen") called Boulos at home to discuss Taylor's EEOC Charge. Allen Dep. Exhibit 5.*

**Undisputed for purposes of this Motion.**

37. *Boulos met with Allen and her assistant, Vikki Finn, on June 29, 2001, to discuss Taylor's EEOC charge. Allen Dep. Exhibits 5-6.*

**Undisputed for purposes of this Motion.**

38. *Boulos told Allen that he believed that Elkhodary harassed and discriminated against Taylor based on her race. Boulos Dep. at 96.*

- 5 -

    **Undisputed for purposes of this Motion.**

39.    On July 3, 2001, Dr. Yu opined that Boulos should not be going to work. Boulos Dep. Exh. 7.

    **Undisputed for purposes of this Motion.**

40.    Boulos remained out on workers compensation through the month of July, 2001. Boulos Dec. ¶ 5.

    **Undisputed for purposes of this Motion.**

41.    It is undisputed (Austin admits) that Austin authorized a letter on August 17, 2001 to Boulos that was not sent, stating that Boulos needed to return to work by October 1, 2001. See Exh. B hereto; Defendants' "stipulation" as to that date, Exhibit F hereto; Austin Dep. Exh. 9; Austin Dep. at 129-30. The August 17 letter states that Defendants were willing to consider Boulos' "candidacy for any position," if he was unable to return to work by October 1. Austin Dep. Exh. 9.

    **Undisputed for purposes of this Motion.**

42.    In early August 2001, Zurich Insurance sent Boulos for an "independent medical examination" of his condition. Boulos Dep. at 143.

    **Undisputed for purposes of this Motion.**

43.    On August 6, Dr. Gordon, Zurich's chosen doctor, examined Boulos. Boulos Dep. at 143-44.

    **Undisputed for purposes of this Motion.**

44.    Dr. Gordon spent just approximately three minutes on his examination of Boulos. Boulos Dep. at 183-84.

    **Undisputed for purposes of this Motion.**

45.    Boulos received conflicting diagnoses regarding his back from his personal physician, Dr. Yu, and Omni's physician, Dr. Gordon.

    **Undisputed for purposes of this Motion.**

46.    Dr. Gordon disagreed with Dr. Yu, finding that there was no limitation on Boulos' physical capacity as a result of a work related injury. Exhibit A hereto (IME report from Dr. Gordon).

25186817\V-1

**Undisputed for purposes of this Motion.**

47. On August 24, 2001, Karen Treciak from Zurich Insurance sent a letter to Boulos advising that Dr. Gordon found that "any problems you may be experiencing with your back are due to degenerative conditions and are not a result of your injury at work." Boulos Dep. Exh. 10.

**Undisputed for purposes of this Motion.**

48. That letter further advised that Boulos' benefits were being terminated effective August 24, 2001, that he was "being returned to work immediately," and that Zurich would not [sic] longer authorize any additional medical treatment. Boulos Dep. Exh. 10.

**Undisputed for purposes of this Motion.**

49. Zurich also refused to fund epidural shots to treat Boulos' back injury, as Dr. Yu had recommended. Boulos Dep. at 131.

**Undisputed for purposes of this Motion.**

50. Soon after receiving the letter from Zurich terminating his benefits, Boulos contacted Allen regarding Zurich's determination. Boulos Dep. at 148.

**Undisputed for purposes of this Motion.**

51. Boulos told Allen that Dr. Gordon did not perform a thorough examination. Boulos Dep. at 148.

**Undisputed for purposes of this Motion.**

52. Allen documented this conversation as occurring on August 27, 2001, noting that Boulos claimed that "the independent physician only spent three minutes with him." Exhibit B hereto (Memo to file by Jean Allen dated 8/27/2001 (Bates No. 001822)).

**Undisputed for purposes of this Motion.**

53. It is undisputed that Boulos was examined by Dr. Gordon in early August and that Defendant, through Allen, was aware of his conclusions not later than August 24. Exhibit B hereto (Allen Filememo) at 1823.

**Undisputed for purposes of this Motion.**

54. Allen wrote a memo to the file, which she has dated to August 27, 2001. Exhibit B hereto at 1822-1825.

- 7 -

**Undisputed for purposes of this Motion.**

55. *Therein, she recounts a three-way conversation between herself, Austin, and Boulos, that allegedly occurred on August 27, in which she inquired about whether Boulos would be able to work after a scheduled September 25 medical evaluation. Id.*

**Undisputed for purposes of this Motion.**

56. *Through her memo writing, Allen unmistakably implied that there were no plans to fire Boulos sooner than September 25, 2001, as of August 27 date of the conversation [sic]. Id.*

**Either by mistake or to mislead this Court, Plaintiff claims "there were no plans to fire Boulos sooner than September 25, 2001," citing pages 1822-1825 of Exhibit B, a memo written by Jean Allen. A review of this cited text, however, reveals the only references to September 25 are on Page 1823 and are as follows:**

> **I [Jean Allen] inquired about his evaluation on the 25th of September. He [Boulos] stated that he might feel better after the first injection and have his evaluation with Dr. Yu sooner that [sic] the 25th.**

**Nowhere else in the entire document is September 25 even mentioned. Moreover, throughout the entire document, Allen never once mentioned, suggested, implied, or intimated any thoughts about terminating Plaintiff. That Plaintiff would claim an undisputed fact based upon such a twisted reading of Allen's memo underscores the lack of real disputed facts supported by the record.**

57. *On an occasion in early September 2001, when Boulos came to the Omni Shoreham to turn in a doctor's note, Allen requested that he meet with her regarding Taylor's claim for unemployment. Boulos Dep. at 100.*

**Undisputed for purposes of this Motion.**

58. *Allen asked Boulos if he was aware there was a hearing regarding Sandra Taylor. Boulos Dep. at 100-01.*

**Undisputed for purposes of this Motion.**

59. *Boulos, in fact, had received a notice requesting his presence at the hearing. Boulos Dep. at 101.*

**Undisputed for purposes of this Motion.**

60. *Allen asked Boulos how he would testify at the hearing, to which Boulos responded by telling Allen that he would say that he felt Taylor had been harassed based on her race. Boulos Dep. at 100-101.*

    **Undisputed for purposes of this Motion.**

61. *Allen then asserted to Boulos that: "as managers, we should stick together so we can benefit the corporation which we are working for." Boulos Dep. at 101.*

    **Undisputed for purposes of this Motion.**

62. *Allen repeated this statement several times during the course of the conversation. Boulos Dep. at 101-102.*

    **Undisputed for purposes of this Motion.**

63. *Allen claims that she "[does] not remember saying that comment." Allen Dep. at 179.*

    **Undisputed for purposes of this Motion.**

64. *During the conversation, Boulos told Omni for the first time that he would actually testify in support of Taylor and against the Defendants. Boulos Dep. at 100-101.*

    **Undisputed for purposes of this Motion.**

65. *On September 6, 2001, Boulos testified on Taylor's behalf in an unemployment hearing at the District of Columbia Department of Employment Services, which was attended by both Allen and Elkhodary. Allen Dep. at 75-76.*

    **Undisputed for purposes of this Motion.**

66. *In his testimony, Boulos stated that Taylor had been the victim of racial harassment and discrimination. Allen Dep. at 75-76.*

    **Undisputed for purposes of this Motion.**

67. *General Manager Austin, the principal decision maker, admits that Allen would have told him how Boulos testified. Austin Dep. at 67, 70.*

    **Undisputed for purposes of this Motion.**

    *Sometime before September 8, Allen and Austin spoke to Boulos on the telephone, at which time Austin inquired as to when Boulos would be returning to work. Boulos Dep. at 151-52; Allen Dep. Exh. 12 at 5.*

**Undisputed for purposes of this Motion.**

68. *In that conversation, Austin told Boulos that he had three options: (1) to return to work with no restrictions per Dr. Gordon's instructions; (2) resign; or (3) be terminated. Boulos Dep. at 153.*

    **Undisputed for purposes of this Motion.**

69. *Austin and Allen also repeatedly asked Boulos to get a release from his treating physician, Dr. Yu, before returning to work. Boulos Dep. at 153; Allen Dep. Exh. 12 at 7.*

    **Undisputed for purposes of this Motion.**

70. *Boulos told Allen and Austin that he would attempt to return to work on September 8, despite Dr. Yu's refusal to release him to return to his duties. Boulos Dep. at 155-56.*

    **Undisputed for purposes of this Motion.**

71. *Austin testified that in a case where an employee had conflicting diagnoses from doctors, he "probably would go ahead and want all those for-and-against opinions to be reviewed by people above me to see what their insight would be under that kind of a circumstance" and that he would not have required that employee to return to work with [sic] this "upper-level review." Austin Dep. at 90-91.*

    **Undisputed for purposes of this Motion.**

72. *Early in her deposition, Allen stated that she believed that Boulos had seen a third physician to reconcile the two conflicting diagnoses between his personal physician, Dr. Yu, and Zurich's Dr. Gordon. Allen Dep. at 90-91.*

    **Undisputed for purposes of this Motion.**

73. *Allen was incorrect in her belief.*

    **Plaintiff has cited no evidence in the record to support this factual statement. Accordingly, this "Fact" is not properly before the Court. To the extent this Fact creates a fact issue, Defendant does not dispute that Allen was mistaken in her belief that a third doctor was involved in Plaintiff's treatment.**

74. *Austin testified that under policy, he would have been required to "consult with the corporate office about the circumstances [of Boulos' diagnoses] and get their feedback on their recommendations." Austin Dep. at 146-47.*

    **Undisputed for purposes of this Motion.**

- 10 -

75. *However, Austin testified that he could not remember if he consulted with the corporate office regarding the conflicting opinions between Dr. Yu and Dr. Gordon. Austin Dep. at 147.*

    **Undisputed for purposes of this Motion.**

76. *Jean Allen testified that Boulos' employment was not terminated based on the IME's examination. Allen Dep. at 132.*

    **Undisputed for purposes of this Motion.**

77. *Allen later testified, however, that the release from the IME factored into their decision that Boulos could, in fact, "work full time to assume his normal job responsibilities." Allen Dep. at 133.*

    **Undisputed for purposes of this Motion.**

78. *Allen testified that she believed Boulos could come back to work "[b]ecause it had been determined after the examination that he was in a condition that he could come back and fulfill the responsibilities of his position." Allen Dep. at 133.*

    **Undisputed for purposes of this Motion.**

79. *Neither Allen nor Austin ever made any attempt to reconcile the conflicting medical reports.*

    **Plaintiff has cited no evidence in the record to support this factual statement. Accordingly, this "Fact" is not properly before the Court. To the extent this Fact creates a fact issue, Defendant does not dispute that Allen was mistaken in her belief that a third doctor was involved in Plaintiff's treatment.**

80. *On Saturday September 8, two days after he testified at Taylor's hearing, Boulos returned to work and reported, as instructed, to Peter Austin's office. Boulos Dep. at 156.*

    **Undisputed for purposes of this Motion.**

81. *Austin did not ask Boulos how he felt or any information as to his condition that day, and his manner was very hostile toward Boulos. Boulos Dep. at 156, 161-62.*

    **Undisputed for purposes of this Motion.**

82. *At that September 8 meeting, Austin threatened Boulos' employment by showing him, for the first time, a handwritten document called "Director of Housekeeping Expectation," which freshly outlined Boulos' duties. The document states that: "Any evaluation of your performance will be based on your ability to complete the above.*

- 11 -

> *It is expected that you will do it successfully. These are minimum requirements and not all-inclusive. Failure to move forward with tangible results will required the hotel to intervene in accordance with its progressive disciplinary process." Boulos Dep. at 156; Austin Dep. at 131, 135-6, 139-41; Austin Dep. Exh. 10.*

**Plaintiff's counsel again provides argument, not facts, unsupported by any evidence. There is no evidentiary basis – not even from Plaintiff's own testimony – that Austin "threatened" Plaintiff's employment. Plaintiff's counsel attempts to testify where Plaintiff did not by stating that Austin "threatened" Plaintiff's employment. Plaintiff's counsel's unsupported testimony aside, this fact – at the September 8 meeting Austin presented Plaintiff with the above-referenced document and made the above referenced comments – is undisputed for purposes of this Motion.**

83. *Austin articulated this threat to Boulos despite Austin's inability to recall Boulos exhibiting any performance problems prior to his injury in June 2001. Austin Dep. at 41-42, 117-18, 134, 137.*

**Undisputed, subject to the fact that once again Plaintiff's counsel has inserted testimony completely unsupported by any evidence. Plaintiff has presented no evidence whatsoever that Austin's actions were a threat.**

84. *Austin admitted that such a threat of discipline normally would not be made until repeated performance problems were noted and "coaching" had first occurred, which he did not claim had happened here. Austin Dep. at 117-120.*

**Undisputed, again subject to the fact that Plaintiff's counsel has inserted testimony wholly unsupported by any evidence. Plaintiff has presented no evidence that Austin or anyone else – including Plaintiff – referred to the "Director of Housekeeping Expectations" document as a threat.**

85. *After his September 8 meeting with Austin, Boulos went to his office to perform his duties. Boulos Dep. at 158.*

**Undisputed for purposes of this Motion.**

86. *Later that day, Boulos began to experience such severe pain that he went "in tears" to Austin's office to tell him that he could not continue working without his medication. Boulos Dep. at 158.*

**Undisputed for purposes of this Motion.**

87. *Austin instructed Boulos to go home for the day and meet him in Jean Allen's office on Monday, September 10. Boulos Dep. at 159.*

**Undisputed for purposes of this Motion.**

- 12 -

88. *On Monday, September 10, 2001, Boulos arrived at Allen's office as instructed at which time he met with Allen and Austin and another employee. Boulos Dep. at 159-60.*

    **Undisputed for purposes of this Motion.**

89. *Austin told Boulos that he needed to know if Boulos could return to work "in the full capacity...as the executive housekeeper without the talk about pain and all this. And if you cannot do that then this is an honorable way for you which is to resign and if these two options are not open for you then there is a third one which will not be your choice but then I will take it and I will...terminate you." Boulos Dep. at 160.*

    **Undisputed for purposes of this Motion.**

90. *Boulos testified that Austin was hostile toward him during this meeting as well. Boulos Dep. at 161. Indeed, Austin "never asked [him] about how [he felt.]" Boulos Dep. at 156. Austin had never projected this hostile attitude toward Boulos before he testified against the company. Boulos Dec. ¶ 6.*

    **Undisputed for purposes of this Motion.**

91. *Boulos testified that during this meeting he begged Austin to give him a few more days to see if his condition improved or to come up with money to pay for epidural injections to help his back. Boulos also asked for unpaid leave in order that he might have more time to recover from his injury. Boulos Dep. at 163-64.*

    **Undisputed for purposes of this Motion.**

92. *Boulos also requested that Austin modify his job duties so that he could continue in his position as Director of Housekeeping. Boulos Dep. at 165.*

    **Undisputed for purposes of this Motion.**

93. *Boulos requested only that Austin "work with [him]" around his injury so that Boulos could keep his job. Boulos Dep. at 165-66.*

    **Undisputed, subject again to the fact that nowhere is there any evidentiary support that Plaintiff *only* requested that Austin "work with [him]." Plaintiff requested other things of Austin as well. See Plaintiff's Fact Nos. 91 and 92, above. Plaintiff's counsel has again added new information never provided in Plaintiff's testimony.**

94. *Austin refused to give Boulos more time to recover or modify his job duties. Boulos Dep. at 166.*

**Undisputed for purposes of this Motion.**

95. *Instead, Austin terminated Boulos. Austin Dep. at 96.*

**Undisputed for purposes of this Motion.**

96. *Austin testified that, as General Manager, he could have altered Boulos' job duties to accommodate his physical injury but chose not to do so. Austin Dep. at 173.*

**Undisputed for purposes of this Motion.**

97. *Thus, Austin admitted that a Director of Housekeeping on light duty would be responsible for "doing the schedule, processing payroll, doing the requisitions for purchasing, purchase orders, meet[ing] with vendors, if possible,…anything that would still allow them to do administrative work." Austin Dep. at 79.*

**Undisputed for purposes of this Motion.**

98. *The scenario described by Austin is precisely the arrangement that was made for Boulos when Boulos was placed on light duty for nearly one month after his injury in June 2001, but before his testimony against Omni. See Austin Dep. Exhs. 17, 18.*

**Undisputed for purposes of this Motion.**

99. *Austin testified that if Boulos had been able to return to work, even in a diminished capacity, he would have allowed it. Austin Dep. at 121-22.*

**Undisputed for purposes of this Motion.**

100. *Austin testified in his deposition that he didn't offer Boulos light duty because "he seemed to be in pain." Austin Dep. at 120.*

**Undisputed for purposes of this Motion.**

101. *Austin testified that "based on my observations of [Boulos], the way he was moving, I didn't feel that he would be able to perform." Austin Dep. at 120.*

**Undisputed for purposes of this Motion.**

102. *Austin also testified that he did not believe that the fact that the independent medical examiner spent just [sic] few minutes with Boulos would have impacted his decision to terminate Boulos' employment, "because [he] needed a director of housekeeping." Austin Dep. at 112.*

**Undisputed for purposes of this Motion.**

103. *However, Austin admitted that he could have altered Boulos' job duties. Austin Dep. at 173.*

   **Undisputed for purposes of this Motion.**

104. *Allen also participated in the decision to terminate Boulos. Austin Dep. at 9 [sic].*

   **This statement is a false re-characterization of Austin's testimony. On Page 96 of Austin's deposition (rather than Page 9 as cited in the statement above), in response to whether Jean Allen participated in the decision to terminate Plaintiff, Austin testified he and Allen "…would have had discussions about it…." Austin Dep. at 96:14-17. However, Austin goes on to say that he was the final decision maker. Thus, it is undisputed that Allen participated in discussions involving Plaintiff's termination, but Austin was the decision-maker.**

105. *Allen testified contradictorily that the position of Director of Housekeeping was "not the type of job that can be altered." Allen Dep. at 207.*

   **Undisputed for purposes of this Motion.**

106. *Allen also testified falsely that after September 11, 2001, Omni Shoreham did not offer light duty. Allen Dep. at 221.*

   **For purposes of this Motion, Defendant will assume whichever version of Fact Nos. 106 and 107 is most favorable to Plaintiff.**

107. *Austin testified, however, that this statement was not true and the Omni Shoreham did offer light duty after September 11, 2001. Austin Dep. at 110.*

   **For purposes of this Motion, Defendant will assume whichever version of Fact Nos. 106 and 107 is most favorable to Plaintiff.**

108. *In fact, it is undisputed that Sandra Taylor, the assistant Executive housekeeper was the highest-ranked employee in Housekeeping until Paul Boulos was hired in December 2000 or January 2001. Austin Dep. at 13-14, 28; Boulos Dep. at 13.*

   **Undisputed for purposes of this Motion.**

109. *Although there was no Director of Housekeeping through much of her tenure, Taylor was in fact merely an Assistant Director of Housekeeping. Boulos Dep. at 34.*

   **Undisputed for purposes of this Motion.**

110. *Thus, Defendant operated under Austin for an extended period prior to Boulos' testimony without an Executive Housekeeper.*

- 15 -

**Plaintiff has cited no evidence in the record to support this factual statement. Accordingly, this "Fact" is not properly before the Court. To the extent this Fact creates a fact issue, for purposes of this Motion Defendant does not dispute that Defendant did not have an Executive Housekeeper for some time before Boulos was hired and during the time Boulos was absent from work during his Workers Compensation leave.**

111. *Defendants have utterly failed to show that an operational need caused them to fire Boulos.*

**Again Plaintiff has failed to cite any evidence to support this statement. This statement is not a factual statement but, rather, an attempt by Plaintiff's counsel to advocate his client's position prematurely in an effort to avoid summary judgment on the basis of disputed facts. Moreover, Plaintiff's counsel's argument misstates the law regarding burden-shifting analysis. The proper analysis is did Defendant "articulate some legitimate, nondiscriminatory reason," *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and Defendant has done so here.**

112. *Tellingly, when asked if he offered Boulos a "light duty" opportunity at the time of the firing, Austin responded by asserting not that he did or did not do so, but evasively, that he "knows" Boulos never "asked." Austin Dep. at 105.*

**Defendant will assume for purposes of this Motion that Plaintiff asked for light duty and was denied such request.**

113. *In fact, as shown above, Fact No. 92, Boulos did ask.*

**Defendant will assume for purposes of this Motion that Plaintiff asked for light duty and was denied such request.**

114. *Austin testified that he did not modify Boulos' job duties "[f]or continuity with all our decision making in terms of being able to make sure that everybody was performing at the level they were required to do by their job descriptions." Austin Dep. at 174.*

**Undisputed for purposes of this Motion.**

115. *However, managers within the Omni Shoreham have altered job duties for employees in addition to the prior accommodation of Boulos. For instance, supervisor Charles Briggs purchased wrist supports and ergonomic chairs for employees suffering from carpal tunnel syndrome. Briggs reported directly to Austin. Deposition of Charles Briggs at 34-35, 38-39.*

**Undisputed for purposes of this Motion.**

116. *Austin did not believe that Boulos was faking his injury. Austin Dep. at 95.*

- 16 -

**Undisputed for purposes of this Motion.**

117. *In his Interrogatory No. 12, Boulos asked Omni: "If you allege that any aspect of Plaintiffs' performance was unsatisfactory, state each and every fact in support of your allegation. If you allege that Plaintiffs were not in conformity with or violated any policies, procedures or practices, identify that policy, procedure or practice and describe how each Plaintiff's behavior departed from it." Defendants responded: "…Defendant alleges that Plaintiff Boulos was unwilling to work after being cleared to return to work…" Exhibit C hereto.*

**Undisputed for purposes of this Motion.**

118. *Thus, Defendant has sworn that Boulos' performance and/or behavior violated its policies, since "Boulos was unwilling to work after being cleared to return to work…" by Zurich's doctor. Exhibit D.*

**Undisputed for purposes of this Motion.**

119. *Previously, until Boulos testified against it, Defendant repeated over and over again that Boulos was forbidden from working without clearance from his personal physician. Thus, as late as August 31, 2001, Allen told Boulos that Defendants "needed a release from Dr. Yu when he returned to work on Saturday 9/9/01." Exhibit B at 2192.*

**Undisputed that Allen told Plaintiff that Defendants needed a release from Dr. Yu. However, Plaintiff has presented absolutely no evidence to support his claim that Defendant "repeated over and over again that Boulos was forbidden from working without clearance from his personal physician." Accordingly, this "Fact" is not properly before the Court. To the extent this Fact creates a fact issue, Defendant does not dispute that Omni requested on more than one occasion that Plaintiff obtain a release from Dr. Yu.**

120. *On September 5, 2001, the day before the unemployment hearing, Austin and Allen were still inquiring about whether Dr. Yu had released Boulos to work, and Boulos informed them that he had not. Exhibit D hereto (Allen Filememo Bates No. 0009).*

**Undisputed for purposes of this Motion.**

121. *However, when Boulos arrived at the hotel on September 8, 2001, two days after testifying, he was permitted by Omni to attempt to work.*

**Undisputed for purposes of this Motion.**

- 17 -

122. *Upon terminating Boulos, on its Personnel Information Form, Jean Allen checked that Boulos was not eligible for rehire citing "special circumstances." Allen Dep. Exhibit 1.*

    **Undisputed for purposes of this Motion.**

123. *Allen testified that although she checked the box, she did not remember why she marked that Boulos was ineligible for rehire. Allen Dep. at 153.*

    **Undisputed for purposes of this Motion.**

124. *Allen testified that: "if somebody is terminated for employment with the company, they are not eligible for rehire." Allen Dep. at 155.*

    **Undisputed for purposes of this Motion.**

125. *Austin contradictorily testified that he would have rehired Boulos. Austin Dep. at 100, 149. Austin admitted that he knew of no reason why Boulos would be ineligible for rehire. Austin Dep. at 100, 149-150.*

    **Undisputed for purposes of this Motion.**

126. *Austin also could not explain why Boulos was ineligible for rehire and did not know the meaning of "special circumstances." Austin Dep. at 150.*

    **Undisputed for purposes of this Motion.**

127. *Boulos was offered no expectation of future employment upon healing. Boulos Dec. ¶ 7.*

    **Undisputed for purposes of this Motion.**

128. *Only four days passed after Boulos' termination before Austin filled Boulos' position. Austin Dep. at 156.*

    **Undisputed for purposes of this Motion.**

129. *Austin testified self-servingly, however, that it took 45-60 days to replace Boulos. Austin Dep. at 98.*

    **Undisputed for purposes of this Motion.**

130. *It is apparent that Defendant had selected a replacement before it offered Boulos the so-called option of returning to work in full capacity on September 10, 2001.*

25186817\V-1

      **Plaintiff has again failed to cite any evidence to support this statement. This statement is not a factual statement but, rather, another attempt by Plaintiff's counsel to advocate his client's position prematurely in an effort to avoid summary judgment on the basis of disputed facts. Accordingly, this "Fact" is not properly before the Court.**

131.    Allen wrote a memo to the file dated September 10, 2001 stating falsely that Boulos "wanted us to terminate his employment so that he could receive unemployment benefits. We agreed to termination of employment." Exhibit E hereto (Vol 3, Tab 32 Bates stamp 002186).

      **Defendant will assume for purposes of this Motion that Plaintiff did not want to be terminated.**

132.    Boulos knew that he was not eligible for unemployment benefits because of his injury and never asked to be terminated. Boulos Decl. ¶ 8.

      **Defendant will assume for purposes of this Motion that Plaintiff did not want to be terminated.**

133.    Austin testified conveniently that he could not recall if Boulos resigned. Austin Dep. at 93.

      **Undisputed for purposes of this Motion.**

134.    Boulos denies asking to be terminated in order to receive unemployment. He also denies "agreeing" to termination – he told Defendants that he wanted to keep his job. Boulos Dec. ¶ 9.

      **Defendant will assume for purposes of this Motion that Plaintiff did not want to be terminated.**

25186817\V-1

135. *Austin admits that Boulos is generally truthful. Austin Dep. at 62.*

**Undisputed for purposes of this Motion.**


Dated: October 19, 2006              Respectfully submitted,

                                     /s/  Amy L. Bess
                                     Amy L. Bess, D.C. Bar No. 418985
                                     Sonnenschein Nath & Rosenthal LLP
                                     1301 K Street, NW, Suite 600, East Tower
                                     Washington, DC 20005
                                     202-408-6400 – Telephone
                                     202-408-6399 – Facsimile
                                     abess@sonnenschein.com


                                     /s/  Michael E. Coles
                                     Michael E. Coles
                                     The Coles Firm, P.C.
                                     3838 Oak Lawn Ave., Suite 1825
                                     Dallas, Texas 75219
                                     214-443-7862 – Telephone
                                     972-692-7145 – Facsimile
                                     mikec@colesfirm.com

                                     Counsel for Defendants Omni Hotels
                                     Management Corporation and
                                     Omni Hotels Corporation