IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

TAWFIK BOULOS, )
 )
 )
      PLAINTIFF, )
 )
v. ) Civil Action No.
 ) 1:05-CV-1175-HHK
OMNI HOTELS MANAGEMENT CORP., )
 )
 )
      DEFENDANT. )
_____ )

**PLAINTIFF'S SUR-REPLY TO DEFENDANT'S REPLY TO
PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**SUR-REPLY ARGUMENT**

**DEFENDANT'S BRAND NEW CONTENTION THAT SUMMARY
JUDGMENT MUST BE GRANTED BECAUSE BOULOS WAS "NOT
QUALIFIED" FOR HIS JOB, FAILS**

Defendant (Reply at 3-4) clearly demonstrates the weakness of its case for summary judgment through its brand new argument, asserted for the first time ever on reply, that Boulos failed to set forth a prima facie case of retaliation because he "admitted" he was "not qualified" for the position he already encumbered. In response, Boulos notes most emphatically that he does not admit that he was unqualified for his position. Indeed, it is undisputed in this case that he performed it well.

Furthermore, Defendant blatantly mis-cited the D.C. Circuit's precedents in retaliation cases by incorrectly asserting that "qualifications" are part of the prima facie case a plaintiff must satisfy to survive summary judgment in a race discrimination retaliation claim under 42 U.S.C. § 1981, even where the issue in question does not

involve an attempt to *obtain* a new position through selection or promotion. The actual standard is:

> [T]he plaintiff must establish the three elements of a prima facie case of retaliation: first, that she engaged in protected activity; second, that she was subjected to adverse action by the employer; and third, that there existed a causal link between the adverse action and the protected activity.

Broderick v. Donaldson, 437 F.3d 1226, 1231-1232 (D.C. Cir. 2006)(where plaintiff is not applying for selection or promotion, but rather is already the incumbent in the position, proving "qualification" is not part of the prima facie case required).

In Carter v. George Wash. Univ., 363 U.S. App. D.C. 287, 387 F.3d 872, 878 (D.C. Cir. 2004), cited by Defendant, the D.C. Circuit indeed held as follows:

> For a retaliation claim, the plaintiff must show that "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. Taylor v. Small, 358 U.S. App. D.C. 439, 350 F.3d 1286, 1292 (D.C. Cir. 2003).

The Court then added:

> *Where, as here, the plaintiff claims that the retaliation took the form of a failure to hire, the plaintiff must also show: 4) that [she] applied for an available job; and 5) that [she] was qualified for that position.* Morgan v. Fed. Home Loan Mortg. Corp., 356 U.S. App. D.C. 109, 328 F.3d 647, 651 (D.C. Cir. 2003).

Emphasis added. Carter v. George Wash. Univ., 363 U.S. App. D.C. 287, 878, 387 F.3d 872 (D.C. Cir. 2004)

Here, it cannot be disputed that Boulos was already an incumbent in the position, and the question at issue is whether Defendant chose to seize upon his on-the-job injury to fire him for his protected activity. Thus, as we argued in our opening brief, Boulos has easily satisfied the requisite prima facie case.

2

**DEFENDANT'S ASSERTION THAT PLAINTIFF CANNOT SURVIVE SUMMARY JUDGMENT WITHOUT COMPARATOR EVIDENCE FAILS**

Defendant (Reply at 8) raises another issue for the first time ever on reply. Despite having never even used the word "disparate" or the phrase "disparate treatment" in its opening brief, Defendant now builds up a straw man just to knock him down. Thus, Defendant mischaracterizes Boulos' argument as merely one of "disparate treatment," while simultaneously ignoring Boulos' evidence of Defendant's expressed retaliatory motive, particularly the evidence regarding the timing and sequence of Defendant's actions that illustrates the development of the Defendant's motive, Austin's memorandum which indisputably shows that Defendant had planned to permit Boulos to remain employed at least until October 1, and Allen's warning to Boulos that he'd better "stick together" with Defendant against Sandra Taylor.

Defendant yet again mis-cites the applicable legal standard, a fact that is revealed by a simple review of the very case it cites for the incorrect proposition that Boulos is required to present evidence that a comparator was in the same circumstances as him only without having engaged in protected activity, yet was fired nonetheless. Holbrook v. Reno, relied upon principally by Defendant, creates no such requirement in a case such as this, but actually holds:

> Claims of retaliation are governed by the McDonnell Douglas burden-shifting framework. See Carney v. The American University, 331 U.S. App. D.C. 416, 151 F.3d 1090, 1094 (D.C. Cir. 1998). To establish a prima facie case, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her; and (3) a causal connection between the two exists. 151 F.3d at 1095. If a prima facie case is established, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. The employee must then prove by a preponderance of the evidence that the asserted reason is a pretext for retaliation. See McKenna, 729 F.2d at 790.

3

Holbrook v. Reno, 339 U.S. App. D.C. 4, 196 F.3d 255, 261 (D.C. Cir. 1999). Nowhere does Holbrook or any other D.C. Circuit or U.S. Supreme Court case state anything resembling a rule that summary judgment must be granted against a retaliation plaintiff who was fired after experiencing an on-the-job injury and four days after testifying against the company for race discrimination.

Defendant (Reply at 9-11) states that summary judgment must be granted because Boulos has failed to provide a comparator. Specifically Defendant argues as follows:

> Plaintiff, therefore, makes the argument that Defendant, at its discretion, should have placed Plaintiff on light duty work or otherwise modified his job duties but chose not to do so because Plaintiff supported Sandra Taylor. Plaintiff essentially makes a disparate treatment argument.

This quotation is completely bereft any logic whatsoever, as Boulos' case calls upon the finder of fact to infer retaliation from the sequence and timing of events, Defendant's warning to Boulos to "stick together," Defendant's sudden inflexibility with regard to temporary job modifications after Boulos opposed its discrimination against Taylor, Defendant's change of heart with regard to permitting him until October to heal, Defendant's use of a disciplinary memo against Boulos without following its past practice of first "coaching" the employee, and other evidence. He does not rely, however, on a direct comparison between Defendant's treatment of him and the treatment of any other particular employee. As Defendant's own parenthetical (Reply at 10) states correctly: "*one way* for Plaintiff to show pretext is by showing that similarly situated employees were treated differently." Emphasis added.

4

The adverse action at the center of this case is Defendant's firing of Boulos. The question for this honorable Court, therefore, is whether Defendant fired Boulos in retaliation for his protected activity and testimony, or not. This Court is mandated by appellate authority to consider all the facts and circumstances in determining whether there is no dispute of material fact that Boulos would have been fired on September 10, 2001 regardless of his protected activity, including testifying against the company four days earlier, after being warned he needed to "stick together" with it. While it would certainly have been convenient for Boulos had he been able to identify another employee encumbering the same exact position who also needed temporary job accommodations and received them, but who did not engage in any protected activity, and was therefore a comparator, there is simply no authority for the proposition that the absence of such a comparator renders Boulos a loser on summary judgment. To the contrary, the question is whether, based on the entire record before the Court, including the critical evidence regarding the timing and sequence of events, Defendant's warning to Boulos to "stick together" with Defendant, Defendant's strange last-minute disciplinary letter against Boulos, etc., there is any way that a reasonable jury could conclude that Defendant's actions on September 10 were motivated at least in part by retaliation.

Defendant's argument is apparently an attempt to re-cast this retaliation claim by misapplying the distinctive law that is applied to purely circumstantial race and other discrimination cases not involving retaliatory motivation. Those cases are completely distinct from retaliation cases involving extremely proximate timing of adverse action, because courts—rightly—decline to infer racial, sexual or age-based animus until a plaintiff produces some evidence from which the discrimination may logically be inferred. In many such cases, no such evidence is ever presented and the plaintiff

5

therefore loses.  However, Cones v. Shalala, 199 F.3d at 512 (D.C. Cir. 2000) shows that the law in retaliation cases simply does not require such prima facie evidence from a plaintiff when there is evidence of proximate timing—which can itself be sufficient to require a trial.  Accordingly, the lack of an identifiable comparator does not warrant judgment in favor of Defendant without a trial.

> **DEFENDANT'S REPLY ARGUMENT IGNORES THE EVIDENCE THAT IT WARNED BOULOS NOT TO TESTIFY FOR TAYLOR, AND THAT ONLY AFTER BOULOS' TESTIMONY AGAINST IT, IT REVERSED ITS INTENTION TO PERMIT BOULOS UNTIL AT LEAST OCTOBER 2001 TO HEAL**

As discussed in our opening brief, it is undisputed (Austin admits) that Austin authorized a letter on August 17, 2001 to Boulos that was not sent, stating that Boulos needed to return to work by *October 1, 2001*. See Exh. F to Boulos' Opposition to Defendant's Motion for Summary Judgment, Defendant's "stipulation" as to the August 17 date; Austin Dep. Exh. 9; Austin Dep. at 129-30.  The August 17 letter states that Defendant was *willing to consider Boulos' "candidacy for any position"* (emphasis added), if he was unable to return to work by October 1.  Austin Dep. Exh. 9.  Our opening brief also extensively discussed the significance of Allen's statement, which Defendant admits, that Boulos should "stick together" with Omni rather than testify against it.  The Court should note that Defendant's Reply fails even to attempt to explain how these facts could be reconciled with a summary judgment in Defendant's favor.  In fact, as we have shown, they cannot, since they clearly show that the adverse action was proximately timed after the protected activity and that the action was likely motivated by the protected activity.  Accordingly, summary judgment must be denied.

**DEFENDANT OFFERS NO AUTHORITY FOR THE INCORRECT ASSERTION THAT IT IS FOREVER IMMUNE FROM SUIT FOR RETALIATORY DISCHARGE BECAUSE IT DID NOT IMMEDIATELY FIRE BOULOS UPON HIS VERY FIRST ACT OF PROTECTED ACTIVITY**

Defendant (Reply at 7) contends that Boulos has failed to present prima facie evidence of a connection between his protected activity and the firing, because of the fact that after Boulos informed Defendant in early September 2001 that he intended to oppose it at the Taylor unemployment hearing, he was not fired instantaneously, but rather on September 10, a few days later. Defendant further relies on the fact that after Boulos did so testify on September 6, he was not fired until the 10th. Defendant asserts that "[I]n light of the undisputed facts outlined above, Plaintiff cannot establish a causal connection between his support for Sandra Taylor and his termination."

Defendant's bare assertions in this regard cannot substitute for judicial authority, all of which supports Boulos' argument spelled out in detail in our opening brief, that regardless of which act of protected activity motivated Defendant to fire Boulos, it remains unlawful for it to do so in reprisal.

Defendant (Reply at 7-8) asserts that in order to set forth a prima facie case of retaliation, Boulos is required to prove that he would still have been fired for his protected activity, even if the facts relied upon by Defendant as its stated rationale for firing Boulos had been reversed and Boulos had been able to perform all his duties as of September 10. However, the law is clear that to survive summary judgment Boulos is not required to prove that he still would have been fired absent the existence of the facts that support Defendant's pretextual explanation for its actions. Rather, plaintiff's burden is to set forth a prima facie case that the action was taken at least in part to retaliate, and offer evidence that Defendant's alternative explanation is pretextual, the

combination of which would permit a reasonable jury to conclude that retaliation motivated the action. While Defendant is free, of course, to argue at trial that it would have fired Boulos even absent his protected activity, Boulos has supplied this Honorable Court with ample evidence that this is not the case, such that a disposition cannot be reached without trial.

>**DEFENDANT'S CONTENTION THAT IT IS SOMEHOW IMMUNE FROM SUIT FOR RETALIATION BECAUSE OF A CHANGE IN BOULOS' WORKERS COMPENSATION STATUS, IS UNAVAILING**

Defendant (Reply at 3, 8-11) admits that it altered Boulos' duties while he was receiving workers compensation benefits from Zurich, and that it refused to do so after Boulos testified in Taylor's behalf, which was also after Zurich terminated those benefits. Defendant claims that it was privileged to retaliatorily refuse Boulos' post-benefits request because it had "discretion" to do so, and implies that it could not have done so while Boulos was still viewed by Zurich as "on" workers compensation. However, Section 1981 never renders retaliation discretionary, and Defendant nowhere cites to any legal authority of any sort that somehow compelled it to take adverse action against Boulos once Zurich changed his workers compensation status, which indisputably occurred without any change in Boulos' medical condition – a condition which had not caused Defendant to fire Boulos before he testified. Hence, Defendant has in no way even begun to rebut Boulos' evidence that its explanation for firing Boulos is pretextual, requiring trial.

Defendant's (Reply at 10) contention that since Boulos' claims herein are against Defendant, not Zurich Insurance, Boulos therefore "cannot contest that . . . Omni was not required to modify Plaintiff's job duties," is puzzling and completely without merit. In case any clarification is necessary, Boulos asserts that Defendant retaliated against

8

him by denying him the same considerations it was willing to provide him before he testified against the company, after he provided that testimony at Taylor's unemployment hearing. Defendant admits that those are the facts, but contends it is essentially immune to a claim of race discrimination retaliation in its firing of Boulos because Boulos was not on workers compensation at the time of the firing. However, in the first place, Defendant has failed to provide any authority whatsoever creating any sort of privilege or immunity from a Section 1981 suit on grounds that the plaintiff is not "on" workers compensation at the time of the retaliation. Moreover, Boulos has easily offered sufficient prima facie and pretext evidence to show that Defendant's firing decision was based on his testimony against Defendant rather than the fact that Defendant's insurer was no longer covering Boulos' injury.[1]

### DEFENDANT'S DENIAL OF HAVING THREATENED BOULOS FAILS

Defendant (Reply at 3) contends that it did not threaten Boulos. However, it is undisputed that Defendant suddenly issued a memo to Boulos on Saturday, September 8, two days after Boulos' testimony against Defendant, which stated that: "Failure to move forward with tangible results will required the hotel to intervene in accordance with its progressive disciplinary process." Moreover, as shown in our opening brief, it is undisputed that Austin's issuance of the memo prior to any "coaching" was outside Defendant's usual practices.

### CONCLUSION

For the reasons set forth both herein and in our opening brief, summary judgment should be denied.

---

[1] **Contrary to Defendant (Reply at 10), Boulos' claims against Defendant herein in no way constitute an admission of any sort that Zurich acted properly in reversing its prior coverage of his injury. That question is just not before this Court in this proceeding.**

Respectfully submitted,

THE GOLDSMITH LAW FIRM, LLC

/s/
_____
Leizer Z. Goldsmith
D.C. Bar No. 419544
5335 Wisconsin Avenue NW
Suite 4400
Washington, D.C. 20015
Tel:  202-895-1506
Fax: 202-318-0798